**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **James P. Laplante** | : | |
| **Plaintiff** | | |
| **Vs.** | : | **C.A. No. 05-496 ML** |
| **OneBeacon Insurance Group** | : | |
| **Defendant** | : | |
| | : | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO REMAND OR ABSTAIN,OR, TO DECLINE TO DECLARE.**

1. **Background:**

The Constitution, Article III, §2, allows the Congress to provide jurisdiction to inferior courts, such as the U.S. District Courts, over civil disputes between citizens of different states[1]. Pursuant to 28 U.S.C. § 1332, the Congress provided that U.S. District Court has jurisdiction over disputes between citizens who are domiciled in different states.[2]

Presently, James Laplante lives in the State of Vermont. Presently, "OneBeacon Insurance" does business in State of Vermont. There may be a lack of complete diversity.

As set forth in his verified complaint, initially on August 30, 2002, when the policy was issued under a form of policy signed and headed under the name of

---

[1] **U.S. Constitution, Article III, Section 2.** The judicial power shall extend to all cases, in law and equity, arising under this Constitution, the laws of the United States, and treaties made, or which shall be made, under their authority;--to all cases affecting ambassadors, other public ministers and consuls;--to all cases of admiralty and maritime jurisdiction;--to controversies to which the United States shall be a party;--to controversies between two or more states;-- between a state and citizens of another state [see Amendment XI];--between citizens of different states;--between citizens of the same state claiming lands under grants of different states, and between a state, or the citizens thereof, and foreign states, citizens or subjects.
[2] 28 U.S.C.A. § 1332.
**(a)** The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between--
**(1)** **citizens of different States**;***

"OneBeacon Insurance" to James Laplante and Corrina Brown, James Laplante lived in the State of Vermont with his then fiancée, Corrina Brown, in Quechee, Vermont, where she worked.

Ms. Brown had earlier purchased a house in Rhode Island, which was being rehabilitated and where James Laplante was domiciled when, on February 23, 2003, his vehicle insured by OneBeacon Insurance, as it was avoiding a hit and run driver, hit a pole in Lincoln, Rhode Island, causing James Laplante to be severely injured. He was subsequently treated for three months in Rhode Island. Eventually, being disabled, Laplante returned to Vermont to live and recuperate with Corrina Brown in Quechee, Vermont, where is still resides, the house in Rhode Island having been sold.

In 2004, a Rhode Island court dispute arose between Laplante's lawyer in Rhode Island, Michael Egan, and James Laplante regarding the adequacy of Egan's representation with OneBeacon Insurance. (See Michael R. Egan, Esquire vs. James Laplante, Alias And Joseph Laplante, Alias And OneBeacon Insurance Group, Dba One Beacon Insurance, C.A. NO. KC 04-689).

"OneBeacon Insurance" initially offered to settle in June of 2004 the uninsured driver claim of James Laplante and his father's liability claim as a passenger for the joint sum of $300,000, claiming that was the policy limits. After he was terminated, Michael Egan had then claimed an attorney's fee on the basis of a $300, 000 claim, which James Laplante had refused to accept. He had more than $1.2 million of serious injuries. James Laplante eventually settled the legal fee matter with Michael Egan. Laplante agreed to pay Egan $60,000 from his future settlement with OneBeacon Insurance in December of

2005.Eventually, his father, Joseph Laplante, settled his own liability claim for its limits in August of 2005.

Interestingly, OneBeacon Insurance had not sought to remove that related state matter to Federal Court. Eventually, James Laplante's father, Joseph, paid the $60,000 fee to Egan in KC 04-689, although OneBeacon has yet to pay any money, but $5,000 for medical payments, to James Laplante, to date. James Laplante is still awaiting medical treatment for lack of funds.

Laplante then filed in November of 2005 a declaratory judgment action, KC 05-1019, against "OneBeacon Insurance" claiming the applicability of the provisions of R.I.G.L.§ 27-7-1 (i) to his contract of insurance with OneBeacon Insurance; and asserting that he paid three (3) premiums for uninsured coverage in 2002, and, was thus entitled to the sum of $900,000, not the otherwise $300,000 offered.

Laplante then filed a motion to disburse the undisputed amount of $300,000, which was set for hearing on December 9, 2005 in Kent County Courthouse, and filed a motion for partial judgment for payments of $900,000 for the three (3) premiums for uninsured coverage, and $10,000, on the paid premiums for medical coverage, and $10,000 for the property damage claim. One medical payment of $5000 had been made by OneBeacon Insurance to James Laplante in 2005. Two more medical payments of $5,000 are required plus the unpaid property insurance claim of $10,000on Laplante's car is also due. That summary judgment motion was scheduled for January 9, 2006 in Kent County Court House.

The Defendant, OneBeacon Insurance, having received notice of the Plaintiff's motions, then removed the matter of KC-1019 to federal court on the alleged basis of the present existence of diversity of citizenship between the Plaintiff and Defendant.

Apparently, OneBeacon Insurance did not like the state forum in which Laplante's motion for partial payment of the $300,000 undisputed amount was pending and in which his motion for summary judgment on stacking, $920,000, was pending. It essentially changed ball fields after the ball game begun.

Plaintiff here challenges the existence of diversity and suggests abstention and declination is appropriate in these circumstances. Rhode Island should interpret its own statutes.

2. **There is no diversity of citizenship between the Plaintiff and Defendant to justify this Honorable District Court exerting in jurisdiction over this dispute about the extent of coverage between the insured, James Laplante, and the insurer, "OneBeacon Insurance".**

Plaintiff suggests to the Court that on August 29, 2002 when Laplante and OneBeacon Insurance entered a contract, that they were both Vermont Domiciliaries, that on February 23, 2003 when the accident occurred that both the Plaintiff and the Defendant, as unincorporated business entity, were also domiciliaries of the State of Rhode Island; and that on November 30, 2005 when this case was removed from the R.I. Superior Court, both the Plaintiff and Defendant were domiciliaries of the State of Vermont.

There are several unusual nuances regarding the existence of "OneBeacon Insurance" as an insurer and its various domiciles, which have been created solely by actions of "OneBeacon Insurance", which must be weighted in determining the domiciles

and citizenship, if any, of the Defendant, "One Beacon Insurance", for the purpose of diversity jurisdiction.

According to 28 U.S.C.A. § 1332 **(c)** "For the purposes of this section and section 1441of this title--**(1)** a corporation shall be deemed to be a citizen of any State by which it has been incorporated **and** of the State where it has its principal place of business; ***".

"Section 1332 of 28 USCS must be construed strictly, literally, and narrowly, in accordance with the congressional intent and policy, and with due regard for the independence of state governments." 32A Am.Jur.2d §1264 Construction of statute.

Plaintiff does not believe that there is sufficient evidence to prove that "OneBeacon Insurance" has a separate corporate existence or is a state licensed auto insurer, which would otherwise might make it a beneficiary of the provisions of 28 U.S.C.A. § 1332 (c).

There is and has been much confusion about the question of the business name of One Beacon and the actual domiciles of its business.

On August 29, 2002, under the page heading of OneBeacon Insurance, Dennis R. Smith, Secretary, and Michael J. McSally, President, OneBeacon Insurance endorsed an automobile insurance policy contract, form numberg13007, at page 16, with James LaPlante and Corrina Brown of Vermont, which indicated on page 1 in the following opening clause the following: "**Agreement.** In return for payment of the premium and subject to the terms of this policy, **we** agree with you as follows: ***"

Presently, Dennis R. Smith appears to be the agent for service or officer for several corporations, which utilize a version of the name "OneBeacon", but none by the

name of "OneBeacon Insurance" which is name on the policy received by the Plaintiff, James Laplante. "OneBeacon Insurance" does not appear to have a separate corporate existence.

"OneBeacon Insurance" which signed the insurance contract with James Laplante initially in Vermont in 2002 does not appear to be in or itself a separate corporation in any state; and yet, its appears to sell auto insurance in nearly all states of the United States, including Vermont and Rhode Island, under different versions of its name, but not under the name "OneBeacon Insurance."

The Plaintiff suggests that if "OneBeacon Insurance" presently does business in Vermont as a non corporation selling insurance than complete diversity now may not exist since James Laplante now also lives in Vermont.

The confusion about the name of the Defendant has not been limited to the Plaintiff in this matter. The U.S. District Court and First Circuit have had to grapple with the same issue of confusion of names from another perspective. This Honorable Court in a previous decision, *Beacon Mut. Ins. Co. v. OneBeacon Insurance Ins. Corp.* 376 F.Supp.2d 251, 261 (D.R.I., 2005.), discussed the history of the name and the allegations of Beacon Mutual Insurance Company about the confused use of the name. "OneBeacon" This Court initially found that "OneBeacon Insurance" was not prohibited from using such name in Rhode Island, although there might have been some confusion as to similarity of the name to Beacon Mutual Insurance Company which primarily sells worker compensation insurance in Rhode Island. This Court did not find that confusion amounted to a legal violation. The First Circuit Court, however, in the matter of *Beacon Mut. Ins. Co. v. OneBeacon Ins. Group,*376 F.3d 8, 71 U.S.P.Q.2d 1641 C.A.1

(R.I.),2004, disagreed, and remanded the matter to this Court to reconsider the evidence on the confusion issue.

The dicta and discussion of the court history of "OneBeacon" are helpful to understanding the nature of the Plaintiff's concerns here about issue of complete diversity although in that case there was a federal question of copyrights, which justified removal from the State Courts.

The dicta in those cases suggests that "White Mountains Insurance Group, Ltd" may have also acquired York Insurance of Maine, whose name appeared on the face sheet of OneBeacon's policy with Laplante, and then, OneBeacon proceeded to manage York's contracts under the name "OneBeacon Insurance," The reports of York Insurance of Maine to the Maine Insurance Commissioner and to NAIC indicate than no premium income has been received after 2002. Court Dicta also suggests that "OneBeacon" does business in several states under the name "OneBeacon Insurance", albeit it is not a corporation..

The following dicta in those federal cases may shed some light here.

> "Although OneBeacon's ***19** business extends to other states and other forms of insurance, a fact finder could reasonably conclude that those other lines of business do not dispel the potential for confusion in the Rhode Island market for workers' compensation insurance.
> Beacon Mut. Ins. Co. v. OneBeacon Ins. Group,376 F.3d 8, 19, C.A.1 (R.I.),2004."
> ***
>
> "Every insurance broker licensed by the State of Rhode Island is an agent of Beacon. (Tr. of 2/28/05 at 132.) All insurance offered by OneBeacon, in contrast, is sold exclusively through the company's independent insurance agents. (*Id.* at 133.) Each of these agents in Rhode Island is also an agent for Beacon. (*Id.*) Beacon offers its workers' compensation insurance through agents, as well as through direct sales. (*Id.* at 132.) OneBeacon restricts workers' compensation offerings to those who purchase other types of coverage. (Tr. of 3/3/05 at 109.) The rates OneBeacon charges for workers' compensation ***261**

coverage are generally the same as Beacon's rates. [FN4] (Tr. of 2/28/05 at 124.)

"OneBeacon Insurance Group ("Defendant" or "OneBeacon Insurance"), formerly known as CGU Insurance, adopted its current name, and began using a lighthouse logo as well, in June 2001. *** OneBeacon Insurance (then known as "CGU Insurance") was sold to White Mountains Insurance Group, Ltd. ("White Mountains") in 2001 and OneBeacon Insurance adopted its current name and lighthouse logo in connection with that sale.
*** All insurance offered by OneBeacon Insurance, ***, is sold exclusively through the company's independent insurance agents." (*Id.* at 133.) See *Beacon Mut. Ins. Co. v. OneBeacon Insurance Ins. Corp.* 376 F.Supp.2d 251, 261 (D.R.I., 2005.).

To the best of Plaintiff's search of existing data bases, neither the name "OneBeacon Insurance" nor the name "OneBeacon Insurance Group" is incorporated in any state of the United States.

"OneBeacon Insurance" received the premiums paid by Laplante. "OneBeacon Insurance" addressed its communications to Laplante under the name of "OneBeacon Insurance", See Exhibit C to Plaintiff's Summary Judgment Motion. OneBeacon Insurance is the signatory as the insurer on the auto insurance policy of Laplante, See Exhibit A to Plaintiff's summary judgment motion, at Page 18 of form13007 09 05, h OneBeacon Insurance has paid $300,000 to Joseph Laplante, the passenger in James Laplante motor vehicle.

The Secretaries of State in Rhode Island, Massachusetts and in Maine, report a foreign corporation, incorporated in Delaware, doing business in those states under the corporate name of "OneBeacon Insurance Risk Management, Inc.", at One Beacon Street, Boston, Massachusetts.

In Rhode Island, the Secretary of State reports that OneBeacon Risk Management, Inc. is a Delaware Corporation authorized to do business in Rhode Island, and that its business address is OneBeacon Risk Management, Inc. of One Beacon Street, Boston, Massachusetts, 02108 at telephone number 617 725-6000, the main number apparently all OneBeacon entities.

In Massachusetts, the Secretary of State lists eight (8) corporations with versions of the name " OneBeacon" located at OneBeacon Street, in Boston; some of which are associated with the same Dennis R. Smith who endorsed the initial Laplante insurance contract as the "Secretary of OneBeacon Insurance.".

| **Entity Name** | **Identification Number** | **Old Identification Number** | **Principal Office Address, City, State, Zip, Country** |
|---|---|---|---|
| ONE BEACON, LLC | 043540474 | 000730749 | 1 BEACON ST., BOSTON, MA 02108-0000 USA |
| ONEBEACON AMERICA INSURANCE COMPANY | 000035961 | | ONE BEACON STREET, BOSTON, MA 02108 USA |
| ONEBEACON ASSET MANAGEMENT, INC. | 046140276 | | ONE BEACON STREET, BOSTON, MA 02108 USA |
| ONEBEACON CORPORATION | 510109776 | | 1 BEACON ST, BOSTON, MA 02108 USA |
| ONEBEACON FINANCE CORPORATION | 043038896 | 000294226 | ONE BEACON ST., BOSTON, MA 02108 USA |
| ONEBEACON INSURANCE GROUP LLC | 522272489 | | ONE BEACON STREET, BOSTON, MA 02108 USA |
| ONEBEACON RISK MANAGEMENT, INC. | 042562637 | | 1 BEACON ST., BOSTON, MA 02108 USA |
| ONEBEACON SERVICES CORPORATION | 000765743 | 000000000 | 1 BEACON ST., BOSTON, MA 02108 USA |

OneBeacon America Insurance Company is a Massachusetts Corporation, which was formerly Commercial Union Insurance Company until October 17, 2001.

OneBeacon Asset Management, Inc. was formerly CGU Asset Management Inc. until August 13, 2001. On May 26, 1999, it was named Commercial Union Investment MA .It was a Delaware Corporation doing business in Massachusetts until it withdrew on March 25, 2005.

OneBeacon Insurance Group LLC at One Beacon Street in Boston, Massachusetts is a foreign limited liability company, organized in Delaware on December 31, 2001, of which Dennis R. Smith is its agent for service. Dennis R. Smith is the same Secretary who signed the contract with James Laplante. He is also the secretary of OneBeacon Corporation at One Beacon Street, Boston, Massachusetts.

According to the Massachusetts Secretary of State, OneBeacon Services Corporation is a Delaware Corporation registered as foreign corporation doing business at One Beacon Street, Boston, Massachusetts. Its registered agent is also Dennis R. Smith.

According to the Massachusetts Secretary of State, One Beacon Risk Management, Inc. is a Delaware Corporation doing business at One Beacon Street, in Boston, Massachusetts. Until August 13, 2001,it was known as Commercial Union Risk Management. Its secretary is also Dennis R. Smith.

None of the Insurance Commissioners in those states report the corporate entity, "OneBeacon Insurance Risk Management, Inc." as an insurer.

If the insurer is not a corporation, then, is it a citizen of a "different state" than of the Plaintiff?

How can this Court apply to a non-corporation the type of corporate analysis suggested by holdings in our First Circuit? If there is no corporation involved, then how

can a court apply the so called nerve center test or the locus of operations test, which depends on the characteristics of a corporation's business, as otherwise described in 28 U.S.C.A. § 1332(c)(1)and in *Diaz-Rodriguez v. Pep Boys Corp.*, 410 F.3d 56 (1st Cir. 2005) and in *Ford Motor Credit Co. of Puerto Rico, Inc. v. Caribe Ford Inc.*, 247 F. Supp. 2d 118 (D.P.R. 2003)?.

Plaintiffs suggest the Defendant has not met its burden to proof diversity sufficient to justify removal. Is its non-corporate locus of operations in Bermuda, Boston, or Vermont? What choice of law is the Defendant seeking on the merits of the request for a declaratory judgment?

More information is needed to justify automatic removal, otherwise the matter should be remanded.

OneBeacon Insurance has not presented an iota of evidence that the Courts of Rhode Island have any bias toward it as a business entity. Note that OneBeacon Insurance did not seek to remove the related case of *Egan v. LaPlante and OneBeacon Insurance*, C.A. KC 04-689.

At best the Defendant can claim it initially entered into a contract in the State of Vermont, as an unincorporated business with a Vermont resident in August 2002, who was subsequently domiciled in Rhode Island at the time of his accident. At worst, it must claim at the time of its removal notice, both the plaintiff and the defendant maintained a domicile in Vermont. Neither claim will satisfy the test of complete diversity.

The Plaintiff does not accept the premise of the Defendant that an alleged insurer who does business outside of a corporate home has an automatic home court designation

of a any U.S. Federal Court it so desires. OneBeacon Insurance has not proven that its unusual situation justifies a call upon the diversity jurisdiction of this Court.

The Plaintiff is concerned that the underlying agenda of the Defendant in shifting its forum to the Federal Court is to disguise its underlying goal of influencing the a court's choice of law on the merits of the question, as described in more detail in the Plaintiff's summary judgment motion and memoranda, which has filed by Defendant in this Court. See Section 16 for a discussion of the *Pardey-Cribbs interest weighing approach.*

Are the interests of a (i) Bermuda holding company, White Mountains Insurance Group, Ltd, which apparently may owns the assets of the actual insuring entity here, and which has no insurance license, or (ii) the interests of the State of Vermont, the locus of the original contract, or (iii) the interests of Boston, Massachusetts, where the paperwork is done, the interests which must be balanced against the interests of the State of Rhode Island, which is the locus of the accident and the locus where Laplante was temporarily domiciled at the time of the accident?

Perhaps, by seeking removal under a claim of diversity of citizenship between Rhode Island and Vermont rather than of Bermuda and Rhode Island, different interests will be weighted in favor of the Defendant, if there is any diversity at all.

OneBeacon Insurance should clarify its basis for removal.

Consider these further nuances of the Defendant's unique situation.

On the Master Driver Automobile Declaration of OneBeacon Insurance, Exhibit A, York Insurance of Maine is listed as the "Company" for policy number YM-z26379f.

On August 12, 2002, Mr. Laplante was informed by OneBeacon Insurance that "Last June, CGU and its many affiliated underwriting companies became OneBeacon Insurance Group. As part of the final transition, we are changing the names of some of our underwriting companies to match our OneBeacon identity. You'll find the new name of the OneBeacon Company that writes your insurance listed in the enclosed endorsement form…" "This change becomes effective 09/06/2002. It applies **Only** to the name of the company. Your coverages, rates, and other terms and conditions remain the same." (Emphasis Added).

Although OneBeacon Insurance advertises nationally on its website that it provides auto insurance coverage through independent insurance agents[3], none of the state licensing authorities, National Association of Insurance Commissioners (NAIC) report the existence of the insurance entity with the name, "OneBeacon Insurance" with a NAIC identification number.

---

[3] **http://www.onebeacon.com/**
"Auto Insurance
The family with a car each for dad, mom, the college sophomore and the high-school senior. The tenant in apartment 2B who's never had a ticket or an accident in 20 years of driving. The distracted shopper who backed into another vehicle in the supermarket parking lot. At OneBeacon we deliver insurance solutions for most operators and most vehicles
Coverage Highlights

- Our auto policy offers standard property damage, liability and medical coverages. In addition, you can tailor your protection by adding coverage for ...
- Roadside assistance
- The gap between the amount owed on a loan or lease and the value of a vehicle (available in certain states)
- Original equipment manufacturer (OEM) replacement parts (for vehicles less than 3 years old)
- Travel expenses following an accident far from home; rental reimbursement while your vehicle is being repaired
- Accidental airbag deployment"

According to 2004 reports of the National Association of Insurance Commissioners, there is a company named "OneBeacon Ins Co", NAIC #21970, which is licensed to sell insurance in 26 states, but not in Rhode Island or Vermont. The home office of "OneBeacon Ins Co", according to the NAIC, is in Pennsylvania.

However, according to the 2005 reports of the Division of Insurance of the R.I. Department of Business Regulations, the following companies are authorized to sell insurance in the State of Rhode Island. OneBeacon American Insurance Company, NAIC Number 20621, of 1 Beacon Street, Boston, Massachusetts, Ma 02108, Tel. 866-299-7064; and "OneBeacon Insurance Company", NAIC Number 21970, One Beacon Street, Boston, Massachusetts 02108, Tel. 866 299-7064.

According to the reports of the National Association of Insurance Commissioners, there is a company named "York Ins Co Me", NAIC # 31267, which is licensed in Vermont, Massachusetts, Maine, and New Hampshire; however it has received no premium revenue after the year 2002.

According to the Insurance Commissioner of the State of Vermont, the following companies are licensed to sell insurance in the State of Vermont: OneBeacon American Insurance Company, OneBeacon Street, Boston, Massachusetts, tel. 627 725-6522; York Insurance Company of Maine, 707 Sables Oakes Drive, South Portland, Maine, tel. 617 725-6522, and OneBeacon Insurance Company, OneBeacon Street, Boston, Massachusetts.

Note that OneBeacon American Insurance Company and York Insurance Company of Maine have the same listed phone number in Boston, Massachusetts.

According to the Maine Insurance Commissioner, the following companies are licensed to sell insurance in the State of Maine: York Insurance Company Of Maine, NAIC # 31267, OneBeacon America Insurance Company, NAIC #20621, and OneBeacon Insurance Company, NAIC,#21970.

Press releases on the internet suggest that the actual entity of "One Beacon Insurance Group" is a wholly owned entity of White Mountains Insurance Group, Ltd. (NYSE:WTM), of Hamilton, Bermuda.

Industry vendors in Texas and California, apparently, like the insured, James Laplante, believe that "One Beacon Insurance Group", had enough of a business existence to enter into contracts in those states, according to information reported on public web sites.

According to an industry press release on September 11, 2003, Fair Issac Corporation entered into a contract with OneBeacon Insurance Group to process its med pay claims.

> "September 11, 2003 (San Rafael, California, USA) - Fair Isaac Corporation (NYSE:FIC), the leading provider of analytics and decision technology, today announced that **OneBeacon Insurance Group is implementing Fair Isaac's medical bill review services for Personal Injury Protection (PIP) and med-pay bills**. The agreement is the third between OneBeacon and Fair Isaac within the past year, and expands the reach of Fair Isaac's outsourced medical bill review technologies in the insurance industry. " *** **OneBeacon Insurance Group,** Headquartered in Boston, Massachusetts, OneBeacon Insurance Group is committed to being the leading independent agency property-casualty insurance group in the Northeast and for selected specialty businesses. With roots dating back 170 years and an A.M. Best rating of "A" (excellent), OneBeacon offers a wide range of personal, commercial and specialty products and services, which are sold through select property-casualty independent agents. Specialty operations are conducted on a national basis. OneBeacon Insurance Group is wholly owned by White Mountains Insurance Group, Ltd. (NYSE:WTM), of Hamilton, Bermuda. White Mountains' principal

businesses are conducted through its subsidiaries and affiliates in the business of property-casualty insurance and reinsurance."

**"OneBeacon Grows Personal Insurance Operations with Houston General"**
"November 2, 2005
**OneBeacon Insurance Group**, a wholly owned subsidiary of White Mountains Insurance Group, Ltd., has entered into an agreement with Houston General Insurance Exchange to offer auto, homeowners and packaged solutions outside its core territory in the Northeast.
Houston General Insurance Exchange is a full-service property/casualty insurance carrier that is owned by its policyholder members. The company is managed by Houston General Insurance Management Company, a subsidiary of OneBeacon."

**OneBeacon Insurance Group is entering the community banking and the lawyers' professional liability markets.** See (http://www.insurancejournal.com/news/national/2005/11/02/61523.htm)
**OneBeacon, a Boston subsidiary of Hanover, N.H.-headquartered White Mountains Insurance Group Ltd. (NYSE: WTM), plans to target community banks** with assets of $3 billion and law firms with fewer than 150 attorneys for its professional liability coverage.
Craig Collins, vice president community banking, and Paul Ablan, vice president professional liability, is leading the new businesses.
OneBeacon will offer its community banking coverage in all states and the legal professional liability coverage in select states.

According to an agenda report of the San Francisco Board of Supervisors on December 14, 2004, OneBeacon Insurance had a significant enough of business existence in California to pay a $190,000 settlement claim.

**"Introduced by Supervisors or Mayor**

**041648** **[Settlement of Lawsuit - Steve Potter]**

Ordinance authorizing settlement of the lawsuit filed by Steve Potter against the City and County of San Francisco for $50,000 paid to the City and County of San Francisco by Cross-**Defendant OneBeacon**; the lawsuit was filed on March 20, 2003 in the United States District Court, Case No. C03-

> 1217 MEJ; entitled Steve Potter, et al., v. City and County of San Francisco, et al; other material terms of said settlement are **Cross-Defendant OneBeacon will pay $195,000 to plaintiff and plaintiff's counsel and $100,000 to co-defendant Palace of Fine Arts Theater League.** (City Attorney) . RECEIVED AND ASSIGNED to Rules Committee. RECOMMENDED...

According to its nationally accessible website, OneBeacon sells auto insurance nationwide, is headquartered in Boston, Massachusetts, and has several regional offices.

## OneBeacon Office Locations

**OneBeacon's headquarters are in Boston Massachusetts, with regional offices throughout the U.S.**

**Headquarters**
1 Beacon Street
Boston, MA 02108
Phone: 617-725-6000

New England region

**Foxboro, MA**
Foxboro Business Center
One Constitution Way
Foxboro, MA 02035-2661
Phone: 1-800-321-2721
Chris McLaren
cmclaren@onebeacon.com

**Rocky Hill, CT**
100 Corporate Place, 3rd Floor
Rocky Hill, CT 06067-0389
Phone: (860) 256-2820
Toll-Free: 1-877-248-8656
Fax: (888) 545-4788
Commercial Lines: Phil Spencer
pspencer@onebeacon.com
Personal Lines: Joan Roberts
jmroberts@onebeacon.com

**Manchester, NH**
Jefferson Mill

new York region

**New York, NY**
Commercial Lines
140 Broadway
New York, NY 10005
Phone: (212) 618-0228
Rick Hernandez
rshernandez@onebeacon.com

**Buffalo, NY**
Commercial Lines
100 Corporate Parkway
Suite 200
Buffalo, NY 14226-1289
Phone: (716) 862-5502
Bart Oddo
boddo@onebeacon.com

**Melville, NY**
201 North Service Road
Melville, NY 11747
Phone: (631) 423-4400

**Williamsville, NY**
Personal Lines

670 North Commercial
Street
Manchester, NH 03101
Phone: (603) 669-3830

**Portland, ME**
707 Sable Oaks Drive
South Portland, Maine
04106-3279
Phone: (207) 791-1790
Commercial Lines: Norma
Fossett
nfossett@onebeacon.com
Personal Lines: Susan Libby
slibby@onebeacon.com

Atlantic Region

**Atlanta, GA**
5901-B Peachtree
Dunwoody Road
Atlanta, GA 30328-7513
Phone: (404) 682-4900
Toll Free: 1-866-719-2742
Fax: (404) 682-4902
Michael Preston
mpreston@onebeacon.com

**Florham Park, NJ**
83 Hanover Road
Florham Park, NJ 07962
Phone: (973) 966-6060
Vanessa Saitta
vsaitta@onebeacon.com

**Basking Ridge, NJ**
***Personal Lines***
131 Morristown Rd
Basking Ridge, NJ 07920
Phone: (908) 766-8742
Fax: (908) 766-8639
Joe Armeni
joe.armeni@njsi.com

midwest region

**Chicago, IL**
29 North Wacker Drive,
Suite 900
Chicago, IL 60605
Phone: (312) 821-4700
Fax: (312) 634-2044
David Gutman, CPCU
dgutman@onebeacon.com

6400 Sheridan Drive
P.O. Box 50
Williamsville, NY 14240-0050
Phone: (914) 682-2307

western region

**San Francisco, CA**
50 California Street, Suite
850
San Francisco, CA 94111-
4601
Main Phone: (415) 343-3500
Toll Free: 1-800-283-0056
Fax: (415) 343-3502
Toni Mitchell
tmitchell@onebeacon.com

**Seattle, WA**
1200 Sixth Avenue, Suite
1810
Seattle, WA 98101
Phone: (206) 587-6555
Toll Free: 1-866-347-7462
Fax: (206) 587-3281
Mark McGregor
mmcgregor@onebeacon.com

**Orange, CA**
Metroplex, Suite 500
2401 East Katella Avenue
Anaheim, CA 92806-5939
Phone: (714) 923-2101
Fax: (714) 923-2128
Bob Bell
rfbell@onebeacon.com

In summary, James Laplante had a contract in Vermont in 2002 with "OneBeacon Insurance" which was endorsed by Dennis R. Smith as secretary. "OneBeacon Insurance" did not see fit to operate under any corporate name nor did it see fit to license the name of "OneBeacon Insurance" with any state insurance commissioner as an insurance company.

At present, Laplante lives in Vermont. At present, "OneBeacon Insurance" is still adverting and selling auto insurance in Vermont through independent agents.

As an unincorporated business named "OneBeacon Insurance", it should not be allowed to piggy back the use of the various corporate entities with related names to create diversity. OneBeacon Insurance should not be allowed to manipulate judicial forums on the basis of the confusion it has created through the use of various corporate entities including the words "OneBeacon", when none of those corporations signed an insurance contract with Laplante.

Corporations can be shields from liability and can be a ticket to diversity jurisdiction in Federal Court. However, the business name of "OneBeacon Insurance" should not be a Trojan Horse disguised as a corporation in order to gain an entry pass through the walls of diversity.

3. **Federal Courts Should Abstain from Involvement In The Traditional State Automobile Insurance Regulatory Thicket.**

This matter involving complicated questions of state insurance regulation, which was removed from the State Court to this Federal Court allegedly on the basis of an allegation of diversity. If there is such diversity, then this should otherwise be the subject of abstention, and returned to the state court on that basis. *Burford v. Sun Oil Co.*319 U.S.

315, 63 S.Ct. 1098, 87 L.Ed. 1424 (U.S. 1943); *Smith v. Metropolitan Property and Liability Ins. Co.*,629 F.2d 757, (C.A. Conn. 1980);*Prentiss v. Allstate Ins. Co.*,87 F.Supp.2d 514 (W.D.N.C.,1999); *Mondrus v. Mutual Ben. Life Ins. Co.*,775 F.Supp. 1155, 1157, 1158 (N.D.Ill. 1991).

The key underlying issue in this case involves the question of the applicability of R.I.G.L.§ §27-7-2(i), mandating intrapolicy premium stacking for uninsured coverage, to a domiciliary of Rhode Island injured in an car accident in Rhode Island and treated in Rhode Island Hospital, and, whose automobile insurance policy was issued when he was a resident of Vermont.

The analysis of this provision involves consideration of the various intricate chapters of Rhode Island state law regulating out of state insurers, contained in Title 27 of R.I. General Laws, the various provisions of mandatory provisions for automobile insurance coverage contained in Title 31 of R.I. General Law, and of Rhode Island's underlying statutory policy considerations designed to protect the victims of car accidents and their creditors when uninsured drivers are involved.

The R.I. Superior Court in Kent County in the matter of *Michael Egan v. James Laplante, OneBeacon Insurance*, C.A. 0 C.A. NO. KC 04-689 has already addressed related legal issues in this matter, without objection from OneBeacon Insurance.

On the eve of the Kent County Court considering the claims of the Plaintiff this past month, OneBeacon Insurance decided to abandoned a particular state appropriate forum, and look for a new forum in the U.S. District Court, which was otherwise not suited for handling state regulatory insurance issues.

The Rhode Island Department of Business Regulation has already received considered complaints from James Laplante and his father, Joseph Laplante, regarding the same automobile insurance policy.

Rhode Island's Department of Business Regulation has approximately 627 out of state automobile insurers, which have agreed to register to do business in the State of Rhode Island and be subject to the Rhode Island laws. Certainly, it can determine and advise the Superior Court of the standards to be met under state law by out of state insurers, like OneBeacon Insurance, which does business through several independent brokers here in Rhode Island, and in each other New England state.

Rhode Island has a special regulatory interest in deciding whether or not those out of state insurers will respect its stacking statute when R.I. domiciliaries are involved in Rhode Island accidents, which are subject to its state law requirements.

There are no questions of federal law at stake in this matter.

There has been no complaint in the past from OneBeacon Insurance regarding any unfairness by the Rhode Island Courts.

The primary issue at stake is discretionary, and, is the type of discretionary issue in which a federal court should decline to utilize its own equitable discretion.

The sole issue, which is the subject of the declaratory judgment request, involves an interpretation of Rhode Island's automobile stacking law within the context of Rhode Island's automobile safety and insurance regulatory scheme.

This area of automobile insurance regulation is a traditional area of state concern where federal courts have provided deference and respect to particular state concerns,

especially those which are larger than the particular concerns of the parties involved in diversity litigation in federal courts.

Should a federal court be in the business of second guessing state courts on questions of state regulatory insurance law when the state courts have an adequate remedy standing by?

Should a federal court be in the business of second-guessing the passage by the R.I. General Assembly of a consumer protection law designed to provide domiciles of Rhode Island the benefit of buying multiple premiums for uninsured coverage?

Federal case law suggests that abstention is appropriate here. Laplante's request for declaratory relief meets all standards of abstention.

- **Cases on Abstention and Declination:**

Consider these exemplary cases on abstention and equitable declination.

> Recently, in *New Orleans Pub. Serv. Inc. v. Council of City of New Orleans*, 491 U.S. 350, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989), the Supreme Court summarized the two circumstances where *Burford* abstention is appropriate. First, a federal court should abstain from deciding " 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the results in the case at bar.' " *Id.* at 361, 109 S.Ct. at 2514 (quoting Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976)). Second, abstention is appropriate where the " 'exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.' " *Id.* It is the second category of *Burford* abstention that is at issue in this case.
> To aid in the determination of whether abstention is appropriate within the context of the insurance industry, a court should consider the following factors: **(1) whether the suit is based on a cause of action that is exclusively federal; (2) whether difficult or unusual state laws are at issue; (3) whether the suit requires the court to determine issues that are directly relevant to state policy in the regulation of the insurance industry; and (4) whether state procedures indicate a desire to create special state forums to**

> **regulate and adjudicate these issues.** Hartford Casualty Ins. Co. v. Borg-Warner Corp., 913 F.2d 419, 425 (7th Cir.1990); *see also* General Ry. Signal Co. v. Corcoran, 921 F.2d 700, 709 (7th Cir.1991). We note that, while these *1158 factors are not all inclusive and not all must be present to warrant abstention, Hartford Casualty Ins. Co., 913 F.2d at 425, the issue of whether the questions presented are those of federal or state law seems to be prominent. See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 26, 103 S.Ct. 927, 942, 74 L.Ed.2d 765 (1983) ("[T]he presence of federal-law issues must always be a major consideration weighing against surrender" of jurisdiction"); General Ry. Signal Co., 921 F.2d at 709; Lac D'Amiante du Quebec, LTEE v. American Home Assurance Co., 864 F.2d 1033, 1044 (3d Cir.1988); *see also* Redish, *Federal Jurisdiction: Tensions in the Allocation of Judicial Power* 294 (2d ed. 1990) ("Where no significant question of federal law is involved, then, *Burford* abstention appears not to be harmful to federal interest.").
>
> In light of the above factors, as well as the most recent Supreme Court precedent, we conclude that *Burford* abstention is warranted in this case. Significantly, **this case involves questions of contract interpretation which are governed exclusively by state law**. Moreover, **the regulation of the insurance industry is an area of substantial public concern to the states. The McCarran-Ferguson Act, 15 U.S.C. §§ 1011-1015, specifically authorizes the states to continue serving their traditional role as the preeminent regulators of the insurance industry.*****
>
> *Mondrus v. Mutual Ben. Life Ins. Co.,*775 F.Supp. 1155, 1157, 1158 (N.D.Ill. 1991).(Emphasis Added).

The U.S. Second Circuit Court, which includes Vermont, Connecticut, and New York, addressed a very somewhat state statutory provision mandating uninsured motorist problem contained in another standard insurance form relating to uninsured motorists contained in a Connecticut insurance policy similar to the standard uninsured provision contained in the provisions of OneBeacon Insurance, albeit that form involved denial coverage of relatives for statutory uninsured coverage , not the statutory benefit of an uninsured stacking his uninsured premiums.

In that matter, the Second Circuit Court decided to support abstention. *Smith v. Metropolitan Property and Liability Ins. Co.*,629 F.2d 757, (C.A. Conn. 1980). "The United States District Court for the District of Connecticut, Ellen Bree Burns, Judge, approved and adopted a ruling of a United States Magistrate Arthur H. Latimer that abstention was appropriate under *Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959), in that the suit presented "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." [FN1] *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976). We affirm." The Second Circuit Court discussion in these matters is instructive here."

> Although the jurisdiction which Congress has bestowed on the federal courts may at one time have been thought to be strictly mandatory, see, e. g., Cohens v. Virginia, 19 U.S. (6 Wheat.) 264, 404, 5 L.Ed. 257 (1821); Bacon v. Rutland Railroad Co., 232 U.S. 134, 137, 34 S.Ct. 283, 284, 58 L.Ed. 538 (1914); Prentis v. Atlantic Coast Line Co., 211 U.S. 210, 228, 29 S.Ct. 67, 70, 53 L.Ed. 150 (1908), **it is now well established that we may refrain from deciding questions of state law otherwise within our jurisdiction, where the controversy falls within one of several categories thought to be inimical to harmonious federalism**. See, e.g., Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943) (a state administrative apparatus would be disrupted); Louisiana Power & Light Co. v. City of Thibodaux, supra (where a difficult question of state law of substantial import is presented). See also Railroad Comm. of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) (where federal constitutional issues might be mooted by a determination of a difficult question of state law); see generally ALI, Study of the Division of Jurisdiction Between State and Federal Courts (1969).
>
> In deciding to abstain under Thibodaux, the district court exercised "fair and well-considered discretion." Thibodaux, supra, 360 U.S. at 30, 79 S.Ct. at 1073; see also Lehman Bros. v. Schein, 416 U.S. 386, 390-91, 94 S.Ct. 1741, 1743-44, 40 L.Ed.2d 215 (1974) (use of state certification procedure is discretionary). **In addition, a district court has discretion to withhold declaratory relief, such as is requested here, in order to avoid "needless obstruction of the domestic policies of the states."**

Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, 298, 63 S.Ct. 1070, 1073, 87 L.Ed. 1407 (1943); Beacon Const. Co. v. Matco Elec. Co., 521 F.2d 392 (2d Cir. 1975). The propriety of the district court's decision to withhold such relief is further reinforced by the fact that appellant has recourse to arbitration. Paragraph 22 of the policy provides that disputes as to coverage or amount of payment shall be settled by arbitration upon written election of the insured. On the oral argument appellant indicated that the issue of damages would be submitted to arbitration. Given that both the extent of coverage and the amount of damages are arbitrable, the arbitration proceeding is a fully adequate alternative remedy, which would be substantially duplicative of any proceeding in this court.

Although the availability of alternative remedies is not a bar to declaratory relief, Fed.R.Civ.P. 57, the district court may in its discretion refuse declaratory relief if the alternative remedy is more appropriate. Bituminous Coal Operators' Ass'n v. International Union, U.M.W., 585 F.2d 586, 594-95 (3d Cir. 1978); 6A J. Moore P 57.08(3) (2d ed. 1976). This is not a case in which declaratory relief is particularly appropriate. See, e. g., Luckenbach S.S. Co. v. United States, 312 F.2d 545, 548 (2d Cir. 1963) (seeking declaration of non-liability as to admiralty claim asserted by defendant but on which defendant had failed to bring suit); Mine Safety Appliance co. v. Energetics Science, Inc., 416 F.Supp. 530 (S.D.N.Y. 1976) (seeking declaration of invalidity of defendant's patent and concomitant non-infringement). See also Ungar v. Dunkin' Donuts, 68 F.R.D. 65, 145 (E.D. Pa. 1975), rev'd on other grounds, 531 F.2d 1211 (3d Cir.), cert. denied, 429 U.S. 823, 97 S.Ct. 74, 50 L.Ed.2d 84 (1976) (dictum) (purpose of declaratory judgment is to avoid multiplicity and circuity of actions). A unified arbitration of the entire dispute would not only conserve judicial resources but would also avoid potentially abrasive intrusion into an area of state sovereignty. See ***760** Necchi S.p.A. v. Necchi Sewing Machines Sales Corp., 348 F.2d 693, 696 (2d Cir. 1965), cert. denied, 383 U.S. 909, 86 S.Ct. 892, 15 L.Ed.2d 664 (1966) (because issues raised by plaintiff in his request for a declaratory judgment could also be determined in an arbitration proceeding, it was within the discretion of the district court to dismiss "the parallel and duplicative action seeking declaratory judgment."); accord, Aeronaves de Mexico, S.A. v. Triangle Aviation Services, Inc., 389 F.Supp. 1388 (S.D.N.Y. 1974).

II

We turn now to a consideration of whether the conditions for Thibodaux abstention were satisfied here. Both the branches unclear state law and broad impact on state policy must be satisfied; neither is alone sufficient. Meredith v. Winter Haven, 320 U.S. 228, 236-38, 64 S.Ct. 7, 11-12, 88 L.Ed. 9 (1943); compare Thibodaux, supra, with County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959).

The district court was amply justified in concluding that the state law uncertainty as to the validity of the clause excluding coverage for uninsured vehicles was considerable. We need not be concerned here with weighting degrees of uncertainty, compare Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971) with Bellotti v. Baird, 428 U.S. 132, 147- 48, 96 S.Ct. 2857, 2866, 49 L.Ed.2d 844 (1976); no edification whatever is available on this question, either from the Connecticut courts, see,

e. g., Safeco Ins. Cos. v. Vetre, 174 Conn. 329, 387 A.2d 539 (1978); Rosnick v.Aetna Casualty & Surety Co., 172 Conn. 416, 374 A.2d 1076 (1977); Pecker v. Aetna Casualty & Surety Co., 171 Conn. 443, 370 A.2d 1006 (1976); Roy v. Centennial Insurance Co., 171 Conn. 463, 370 A.2d 1011 (1976); Citrano v. Berkshire Mut. Ins. Co., 171 Conn. 248, 368 A.2d 54 (1976); Weingarten v. Allstate Ins. Co., 169 Conn. 502, 363 A.2d 1055 (1975); Griffith v. Security Ins. Co. of Hartford, 167 Conn. 450, 356 A.2d 94 (1975), or from the language of the uninsured motorist statute and its associated regulations.[FN4] The courts of other states are in conflict. Compare Bankes v. State Farm Mut. Auto. Ins. Co., 216 Pa.Super. 162, 264 A.2d 197 (1970) and Beek v. Ohio Casualty Ins. Co., 135 N.J.Super. 1, 342 A.2d 547 (1975), aff'd, 73 N.J. 185, 373 A.2d 654 (1977) with Employers' Fire Ins. Co. v. Baker, 383 A.2d 1005 (R.I. 1978) and Rodriquez v. Maryland Indem. Ins. Co., 24 Ariz.App. 392, 539 P.2d 196 (1975). In other words, we have "no real idea" how the Connecticut courts would decide this question. First Nat'l Bank v. Reed, 306 F.2d 481, 487 (2d Cir. 1962).[FN5]

*** The second branch of Thibodaux is also satisfied here. In Colorado River, supra, 424 U.S. at 814, 96 S.Ct. at 1244, the court made it plain that Thibodaux abstention was not limited to the area of eminent domain law which happened to be involved in the earlier case. See also Kaiser Steel Corp. v. W. S. Ranch Co., 391 U.S. 593, 88 S.Ct. 1753, 20 L.Ed.2d 835 (1968) (water rights). This court has adopted a broad view of abstention. See, e. g., Naylor v. Case & McGrath, Inc., 585 F.2d 557 (2d Cir. 1978);Brown v. First Nat. City Bank, 503 F.2d 114 (2d Cir. 1974);Phillips, Nizer, Benjamin, Krim & Ballon v. Rosenstiel, 490 F.2d 509, 516 (2d Cir. 1973);First Nat'l Bank v. Reed, 306 F.2d 481, 487 (2d Cir. 1962); Beach v. Rome Trust Co., 269 F.2d 367 (2d Cir. 1959); see also Northeastern Tel. Co. v. American Tel. & Tel. Co., 477 F.Supp. 251 (D.Conn. 1978).

*** The fact that the insurance industry is heavily regulated makes it all the more important that we stay our hand in favor of a definitive and uniform interpretation from the state courts. Abstention is particularly appropriate when dealing with a "complicated and comprehensive regulatory statute intended to strike a balance between differing local interests." Brown v. First National City Bank, supra at 118 (Mansfield, J.). See also Barry v. St. Paul Fire & Marine Ins. Co., 555 F.2d 3 (1st Cir. 1977), aff'd 438 U.S. 531, 98 S.Ct. 2923, 57 L.Ed.2d 932 (1978).[FN7]

*Smith v. Metropolitan Property and Liability Ins. Co.*,629 F.2d 757,759,760, (C.A. Conn. 1980).(Emphasis Added).

There is no compelling reason for a federal court to utilize its declaratory discretionary to advise a state about the scope of its mandatory state automobile insurance statutes. This U.S. District Court should not be thrust into the role for which the Rhode Island Supreme Court is better designed in our federal-state structure.

**"B. Declaratory Judgment"**

**"As an alternative holding, this Court will abstain from making a declaratory judgment in the instant matter.** The Supreme Court has often acknowledged that "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." *Quackenbush,* 517 U.S. at 716, 116 S.Ct. 1712 (citations omitted). However, **in cases where the relief sought is equitable in nature or otherwise discretionary, "federal courts not only have the power to stay the action based upon abstention principles, but can also, in otherwise appropriate circumstances, decline to exercise jurisdiction altogether by either dismissing the suit or remanding it to state court."** *Id.,* at 707, 116 S.Ct. 1712 (citing *Great Lakes Dredge & Dock Co. v. Huffman,* 319 U.S. 293, 297, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943)). As noted *infra,* the Second Circuit in *Dittmer* found that *Burford* abstention was improper where plaintiffs challenged the constitutionality of a state statute under the federal constitution. However, the Court also noted that **"to the extent that plaintiffs sought a declaratory judgment, the district court had somewhat greater discretion to abstain."** *Dittmer,* 146 F.3d at 118 (citing *Wilton v. Seven Falls Co.,* 515 U.S. 277, 286, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995) (in declaratory judgment actions, district courts have "greater" discretion to abstain "than that permitted under the 'exceptional circumstances' test of *Colorado River* ")). Indeed, the Supreme Court has required federal courts to decline to exercise jurisdiction over certain types of declaratory judgments. *See e.g.,Huffman,* 319 U.S. at 297, 63 S.Ct. 1070 (federal court must abstain from hearing declaratory judgment action challenging constitutionality of a state tax); *Wilton,* 515 U.S. at 282, 115 S.Ct. 2137 (federal courts have "discretion in determining whether to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdiction prerequisites").

Likewise, district courts in the Fourth Circuit have greater discretion to abstain when declaratory relief is sought. *United Capitol Ins. Co. v. Kapiloff,* 155 F.3d 488, 493 (4th Cir.1998) **("district courts have great latitude in determining whether to assert jurisdiction over declaratory judgment actions.")**; *Centennial Life Ins. Co. v. Poston,* 88 F.3d 255, 257 (4th Cir.1996) (same); *Aetna Cas. & Sur. Co. v. Quarles,* 92 F.2d 321, 324 (4th Cir.1937) (same). When a district court is asked to grant declaratory relief, "the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Centennial,* 88 F.3d at 257 (quoting *Wilton,* 515 U.S. at 288, 115 S.Ct. 2137). Instructive in making such a decision are the factors set out by the Fourth Circuit in dealing with a federal court's decision to abstain **where a pending parallel state court action exists.**[FN9] ***524** *Nautilus Ins. Co. v. Winchester Homes, Inc.,* 15 F.3d 371, 376 (4th Cir.1994). *But see Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.,* 139 F.3d 419, 422 (4th Cir.1998) (holding that a district court may dismiss a declaratory judgment action even when there is no pending parallel state court action).

FN9. These include:
**(i) the strength of the state's interest in having the issues raised in the federal declaratory judgment action decided in the state courts; [ ](ii) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending; [ ](iii) whether permitting the federal action to go forward would result in unnecessary "entanglement" between the federal and state court systems ··· [and (iv) ] whether the declaratory judgment action is being used merely as a device for "procedural fencing"·····**
*Nautilus,* 15 F.3d at 377 (citations omitted)."

*Prentiss v. Allstate Ins. Co.,*87 F.Supp.2d 514, 522, 523, 524 ((W.D.N.1999). (Emphasis Added).

**4. Summary:**

Unlike the New England Patriots, "OneBeacon Insurance" has no home field. It sells automobile insurance under veil of a name in every state in New England through independent brokers, yet the veil has no corporate home. It is either a citizen of every state, and entitled to protection as a citizen sales person in every state; or it is not a citizen of any state and not entitled to any protection of diversity in any state. In either situation, there is no complete diversity in this matter to justify federal court jurisdiction.

Furthermore, federal courts were not designed under our judicial system to be national advisers on state law automobile insurance questions for nationally based automobile insurance companies. State automobile regulatory statutes are the business of state courts, which are well suited to the task. The Federal Court should abstain from being involved in the state insurance regulatory thicket and decline to use its discretionary powers to serve as national advisor on state law questions involving state insurance law.

James Laplante had carefully briefed his legal position before a Justice of the Rhode Island Superior Court who had been well briefed by the parties

regarding their various legal positions in this case over the last six and half months and in a parallel state case. OneBeacon Insurance had no basis other than an available procedural tactic to move a purely state proceeding to a federal forum. Once the parties are on the field and the game has begun, one party should not be allowed to change umpires.

Respectfully submitted,
**Plaintiff**
James P. Laplante
By His Attorney

Keven A. McKenna, Esq.
Keven A. McKenna, PC
23 Acorn Street
Providence, RI 02903
(401) 273-8200
(401) 521-5820 Facsimile

**CERTIFICATION**

I, the undersigned, hereby certify that on the 28th day of December 2005, I mailed a copy of the within Memorandum postage prepaid, to the Attorney of OneBeacon Insurance, C. Russell Bengsten, Carroll, Kelly & Murphy, Counselors at Law, One Turks Head Place, Suite 400, Providence, R.I. 02903.