**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **James P. Laplante** | : | |
| **Plaintiff** | | |
| **Vs.** | : | **C.A. No. 05-496 ML** |
| **OneBeacon Insurance Group** | : | |
| **Defendant** | : | |
| | : | |

**Plaintiff's Memorandum in Support of His Summary Judgment Motion to Remand To State Court on the Basis of the Lack of Complete Diversity, and In Objection to the Summary Judgment Motion of OneBeacon Insurance Group to Dismiss the Plaintiff's Claim Against Itself, and To Add York Insurance Company of Maine as the Party Defendant**

**Travel of the Case:**

On or about November 30, 2005, Defendant, "OneBeacon Insurance Group" entered its appearance in this Court, and filed a Notice of Removal from the R.I. Kent County Superior Court of the action James P. Laplante v. OneBeacon Insurance Group, C.A. No. K.C. 1019.

In its Notice of Removal, Paragraph 3, "OneBeacon Insurance Group" averred that "The **defendant** and the plaintiff are **citizens of different states,** and there is complete diversity with the meaning of Title 28 U.S.C. Section 1332".

In its Answer, on December 2, 2005, as its eighth defense, "OneBeacon Insurance Group" urges that the Complaint, which it has now removed, be dismissed because **"there is no legal entity"** OneBeacon Insurance Group.

In its ninth defense, "OneBeacon Group" then urges that the proper Defendant is "York Insurance Company of Maine".

On January 17, 2006, "OneBeacon Insurance Group", an allegedly non-existent entity, in this Court filed a Motion to Dismiss Plaintiff's Complaint, already then

removed, on the grounds that "York Insurance Company of Maine" should have been the Defendant named in Plaintiff's Verified State Court lawsuit.

The present, allegedly non existent Defendant, "OneBeacon Insurance Group", in its January 17, 2006 Motion, then asked this Court to amend Plaintiff's State Court Complaint, and substitute York Insurance Company of Maine as the proper Defendant.

At the same time, the present Defendant, "OneBeacon Insurance Group", further objected to Plaintiff's Motion to Remand this case to State Court because of a lack of complete diversity.

This Court, later on its own motion, converted Defendant's Motion To Dismiss to a proceeding in Summary Judgment. [1]

**Burdens of Proof:**

---

[1] *.Bank One, Texas, N.A. v. Montle*, 964 F.2d 48, 51.52, (CA.1 (Mass.),1992). ".District courts have wide discretion to determine which procedures to employ in resolving the jurisdictional issue.*O'Toole,* 681 F.2d at 98. The court's discretion, however, is not unfettered. 1 *Moore's Federal Practice* ¶ 0.74[1] at 769; *see also *52 Bose Corp. v. Consumers Union of the United States, Inc.*, 466 U.S. 485, 500, 104 S.Ct. 1949, 1959, 80 L.Ed.2d 502 (1984) ( "[t]he same 'clearly erroneous' standard applies to findings based on documentary evidence as to those based on entirely oral testimony, but the presumption [of correctness] has lesser force in the former situation than in the latter.") (citation omitted); *Dopp v. Franklin National Bank,* 461 F.2d 873, 879 (2d Cir.1972) ("an evidentiary hearing was necessary" where factual dispute arose on a motion for a preliminary injunction). In *Prakash v. American University,* the District of Columbia Circuit, in remanding for further proceedings on the question of diversity, stated: [i]n many instances, and perhaps in most, a party's intent will appear, at least in part, from facts established by documents. When, however, as here, a party expressly declares his intent, and the opposing written submissions do not demonstrate the falsity of the declaration with reasonable certainty, the issue necessarily becomes one of the declarant's credibility. In that event, the court cannot rest its decision simply on the paper record, but must hold a hearing in order to adequately assess credibility. Only in that way is a sound decision on intent possible. *Prakash v. American University,* 727 F.2d 1174, 1180 (D.C.Cir.1984) (citations omitted); *see Rubin v. Buckman,* 727 F.2d 71, 73 (3d Cir.1984) (remanding for further proceedings on whether diversity might exist); *Williamson v. Tucker,* 645 F.2d 404, 414 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981) (where subject matter jurisdiction is attacked "the district court must give the plaintiff an opportunity for discovery and for a hearing that is appropriate to the nature of the motion to dismiss"); *Shahmoon Industries, Inc. v. Imperato,* 338 F.2d 449, 451-52 (3d Cir.1964) (remanding case for further inquiry into the jurisdictional facts where the court had "serious doubts" as to the district court's jurisdiction based on the factual record and where the factual record only raised doubts as to the accuracy of one of the parties' affidavits).

Defendant, OneBeacon Insurance Group, has the burden of proving the factual basis of its removal of the State Court complaint,[2], and the factual basis for dismissing itself and substituting itself with a new Defendant, York Insurance Company of Maine.

These are not Plaintiff's burdens in the first instance. The Plaintiff did not ask for removal.

Defendant, OneBeacon Insurance Group has the burden of proving in the first instance the existence of complete diversity of the members of OneBeacon Insurance Group, in accordance with *Carden v. Arkoma Assocs.,* 494 U.S. 185, 195-96, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990), and *Grupo Dataflux v. Atlas Global Group, L.P.,* 541 U.S. 576 (2004).*Pramco, LLC ex rel. CFSC Consortium, LLC v. San Juan Bay Marina, Inc.,* 435 F.3d 51 (1st Cir. 2006); *Peerless Ins. Co. v. Aetna Cas. & Sur. Co.,* 735 F. Supp. 452 (D.N.H. 1990);*Fernandez-Cerra v. Commercial Ins. Co. of Newark,* 344 F. Supp. 314 (D.P.R. 1972).

Then, if the Defendant can prove the existence of complete diversity within the members of Defendant, OneBeacon Insurance Group, or federal question jurisdiction, it then must next prove that OneBeacon Insurance Group, under no circumstances, would be operating as a common enterprise, known as "OneBeacon Insurance Group", liable to the Plaintiff. Compare standards set out 1 Fletcher, Cyclopedia of Private Corp. § 43:

---

[2] .BankOne, Texas, N.A. v. Montle, 964 F.2d 48, 50, ( C.A.1 (Mass.),1992). "Generally, once challenged, "the **party invoking subject matter jurisdiction [here Bank One] has the burden of proving by a preponderance of the evidence the facts supporting jurisdiction.**" James W. Moore et al., *Moore's Federal Practice* ¶ 0.71[5.--1] (2d ed. 1985); *see also Lundquist,* 946 F.2d at 10 (plaintiff must support allegation of jurisdiction by "competent proof"); *O'Toole v. Arlington Trust Co.,* 681 F.2d 94, 98 (1st Cir.1982); *Hawes,* 598 F.2d at 702; *Lugo-Vina v. Pueblo International, Inc.,* 574 F.2d 41, 44 (1st Cir.1978)."

Parent and subsidiary corporations, regarding holding companies responsibilities for subsidiaries.

Assuming the unusual situation of a dismissed case being kept alive to be reformed into a second case by substitution of new Defendant, then the "dismissed Defendant", OneBeacon Insurance Group, must prove that **only** York Insurance Company of Maine could be held liable for James Laplante's claims, and that there is complete diversity between Laplante and York Insurance Company Maine. Compare *Diaz-Rodriguez v. Pep Boys Corp,* 410 F.3d 56 (C.A.1 Puerto Rico, 2005).

Defendant, OneBeacon Insurance Group, has not met, and cannot meet, its evidentiary burdens. Moreover, there may exist sufficient contested issues of material fact to defeat a Rule 56 Summary Judgment Motion, which may require an evidentiary hearing. See *Bank One, Texas, N.A. v. Montle*, 964 F.2d 48, 50, (C.A.1 Mass.1992).

Although Defendant OneBeacon Insurance Group is subject to an injunction issued by this Honorable Court, in response to Plaintiff's Request For Admissions, (Request Number 8) it has "denied that there is an entity known as OneBeacon Insurance Group."

Apparently, a non-existing entity removed this matter from Kent County Superior Court to this United States District Court for the District of Rhode Island. If the Defendant, an asserted non-entity is correct, then, by force of logic, it cannot be a citizen of any state. If Defendant is not a citizen, this Honorable Court must lack diversity jurisdiction over Defendant OneBeacon Insurance Group because this Court's jurisdiction only extends to cases between "citizens of different states". U.S. Const. Article III, §2.

On the Motion to Remove, Defendant, OneBeacon Insurance Group, a juridical entity, has not met its burden of proof that Defendant OneBeacon Insurance Group is an artificial entity, or that its members[3],[4] are citizens of different states other than that of James Laplante who was a citizen of the State of Vermont at the time of the removal petition, as required by Article III. §2 of the United States Constitution: " The judicial power shall extend to all cases, "***between citizens of different states ***".

OneBeacon Insurance Group removed this matter. OneBeacon Insurance Group, an alleged group of insurer's, claims that one of its alleged members, York Insurance Company of Maine, is the real party in interest. OneBeacon Insurance Group denies it has juridical existence. A dilemma is presented.

Can an entity exist for the purpose of federal question jurisdiction, and at the same time not exist as a defendant in a State Court lawsuit regarding payment of an uninsured motorist claim?

Has OneBeacon Insurance Group here met the burden of the removal standards of diversity for non corporate entities set out in *Carden v. Arkoma Assocs.,* 494 U.S. 185, 195-96, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990)? The U.S. Supreme Court decisions

---

[3] *Carden v. Arkoma Assocs.,* 494 U.S. 185, 195-96, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990).

.[4] *Fernandez-Cerra v. Commercial Insurance Co. of Newark,* 344 F.Supp. 314, 317,*( D.C.Puerto Rico, 1972).*If the citizenship of the partnership is to be considered, then the Puerto Rican citizenship of the wife would become material and the case would have to be dismissed for lack of diversity jurisdiction. In considering *317 the citizenship of the partnership we have to treat it as a separate and distinct entity under the Gearheart and Melendez cases, supra, so that it would then have to be considered an unincorporated association under the diversity statute, 28 U.S.C. § 1332, which would have the citizenship of its members under United Steelworkers of America v. R. H. Bouligny, 382 U.S. 145, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965).It is well settled that when passing on the presence of diversity jurisdiction, the Court must consider the citizenship of the "real party in interest." Vol. 3A Moore's Federal Practice, Sec. 17.04, p. 111, et seq. In cases where there is one party representing another party, the nature of the representation, as defined by state law, or in the case of Puerto Rico by Commonwealth law, must be studied, so that it may be determined **whether the representing party is the real party in interest** and the represented party is merely a nominal beneficiary party, or the representing party is the nominal party and the represented party the real party in interest. See 3A Moore's, supra, Sec. 17.04, at p. 114. (Emphasis Added)

have never held that an alleged artificial entity can invoke diversity jurisdiction, based on some, but not all, of its members.

Because of its structure, and method of doing business, Defendant OneBeacon Insurance Group clearly is subject to the authority of *Carden v. Arkoma Associates,* 494 U.S. 185, 192-195 (1990) also cited in *Grupo Dataflux v. Atlas Global Group, L.P.,* 541 U.S. 576 (2004).

In *Carden, supra.,* the Supreme Court held that, with regard to establishing citizenship of **all** artificial entities, **other than that of corporations**, existence of **complete diversity** is to be determined as follows: *Carden v. Arkoma Associates, 494 U.S. 185, 192-195 (1990)* "In sum, we reject the contention that, to determine, for diversity purposes, the citizenship of an artificial entity, the court may consult the citizenship of less than all of the entity's members. **We adhere to our oft-repeated rule that diversity jurisdiction in a suit by or against the entity depends on the citizenship of "all the members,"** Chapman, 129 [494 U.S. 196] U.S. at *682, "the several persons composing such association," Great Southern, 177 U.S. at 456, "each of its members," Bouligny, 382 U.S. at 146. 4 U.S. at 195, 196 (*Emphasis Added*).*

If OneBeacon Insurance Group is not a "citizen" of any state, as it claims, then there is no constitutionally based diversity, or federal question jurisdiction established sufficient to justify removal in the first instance.

The Federal Court findings of fact and law in the companion matter of *Beacon Mut. Ins. Co. v. OneBeacon Insurance Ins. Corp*. 376 F.Supp.2d 251, 261 (D.R.I., 2005.) the letters from Defendant to the Plaintiff, and his father, Joseph Laplante (discussed further below) in the instant matter, and the depositions of Dennis Smith (who serves as the

Secretary for members of the Corporations within OneBeacon Insurance Group) and of the Employees in the OneBeacon Insurance Group's Claims Department, Kathleen Ahern and Stephen Schroeder, ostensibly of OneBeacon Insurance Company (another corporate member of OneBeacon Insurance Group) attached hereto and incorporated herein, in and of themselves, prove the juridical existence of OneBeacon Insurance Group; prove that a member of the Group, OneBeacon Insurance Company, by ceding agreement, decides the claims against York Insurance of Maine, and receives its premiums, and that OneBeacon Insurance Group is the correct Defendant.

- **The United States District Court for the District of Rhode Island has recognized the Juridical Existence of the Defendant, OneBeacon Insurance Group.**

Defendant, OneBeacon Insurance Group, in a matter where jurisdiction was granted on the basis of the existence of federal question, i.e. trade-mark and copyright law, has been determined to be a juridical entity, subject to a mandatory injunction for misuse of its name in Rhode Island [5].

Despite suggestions in this matter and related matters before U.S. District Judge William Smith by the Defendant, OneBeacon Insurance Group in *Beacon Mut. Ins. Co. v. OneBeacon Insurance Ins. Corp.* 376 F.Supp.2d 251, 261 (D.R.I., 2005.) and in the Circuit Court for the First Circuit *Beacon Mut. Ins. Co. v. OneBeacon Ins. Group,* 376 F.3d 8, 71 U.S.P.Q.2d 1641 C.A.1 (R.I.) 2004, that the Defendant is only mere name, it is more than a name. It is a single purpose business enterprise *Beacon Mut. Ins. Co. v. OneBeacon Ins. Group*, 376 F.3d 8, 19, (C.A.1 R.I., 2004). "Although OneBeacon's, at

[5] Decision, July 12, 2005, Beacon Mutual Insurance Company v. OneBeacon Insurance Group, U.S.D.C. RI., C.A. 01-344S, Judge William E. Smith, Page 31, "For the foregoing reasons, the Court hereby enjoins Defendant OneBeacon Insurance Group from using the OneBeacon name and lighthouse logo in Rhode Island.

page 19, business extends to other states and other forms of insurance, a fact finder could reasonably conclude that those other lines of business do not dispel the potential for confusion in the Rhode Island market for workers' compensation insurance." . ***"Every insurance broker licensed by the State of Rhode Island is an agent of Beacon. (Tr. of 2/28/05 at 132.) All insurance offered by OneBeacon in contrast, is sold exclusively through the company's independent insurance agents. (*Id.* at 133.) Each of these agents in Rhode Island is also an agent for Beacon. (*Id.*) Beacon offers its workers' compensation insurance through agents, as well as through direct sales. (*Id.* at 132.)"

"OneBeacon Insurance Group ("Defendant" or "OneBeacon Insurance") formerly known as CGU Insurance, adopted its current name, and began using a lighthouse logo as well, in June 2001. *** OneBeacon Insurance (then known as "CGU Insurance") was sold to White Mountains Insurance Group, Ltd. ("White Mountains") in 2001 and OneBeacon Insurance adopted its current name and lighthouse logo in connection with that sale. ***All insurance offered by OneBeacon Insurance, ***, is sold exclusively through the company's independent insurance agents." (*Id.* at 133.) See *Beacon Mut. Ins. Co. v. OneBeacon Insurance Ins. Corp.* 376 F.Supp.2d 251, 261 (D.R.I., 2005.).

- **The Depositions of Dennis Smith, Secretary of the approximate twenty two (22) corporate members of OneBeacon Insurance Group, and of Kathleen Ahearn, an employee of the claims department of One Beacon Insurance Company, recognize the existence of OneBeacon Insurance Group, its letterheads and logo's used for communication with customers, including Joseph Laplante, and James Laplante.**

OneBeacon Insurance Group is an unincorporated group aggregating corporations which, *inter alia*, sells automobile insurance in the fifty (50)[6] state through

---

[6] **Deposition of Dennis Smith**, 2/21/06 Page 9, lines 20-25, Page 10. Lines 1-8: Q. 20 Is this a correct statement: "OneBeacon Insurance Group functions through insurance companies licensed to do business in

independent agents, utilizing appropriate member corporations as initial underwriters, and, shares, through its members, overhead, claims processing[7], [8], [9],

---

all 50 states, selling exclusively via network of independent agents"? A. One or more of the individual member companies making up the group known as the OneBeacon Insurance Group operate in -- in all 50 states. Some companies are licensed in all 50, some are licensed to one. I don't believe we actually write – currently write insurance in all 50 states. We being, meaning the companies in the group, but some of our companies are licensed in all 50 states plus D.C.

[7] **Deposition of Dennis Smith**, 2/21/06 Page 28, line 24-25,29, lines 1-12 1. 24:
1. Is there an agreement that covers claims handling?
Q. Yes.
2 A. Is that your question?
3 Q. Yes.
4 A. Yes.
5 Q. And could you briefly describe it?
6 A. It's 100 percent reinsurance agreement by which York Insurance Company of Maine cedes 100 percent of its insurance business to OneBeacon Insurance Company, which in turn assumes all of that business in exchange for receipt of premiums and it handles the claims on policies written by York Insurance Company of Maine.

[8] **Deposition of Dennis Smith**, 2/21/06 Page 34 line 24,25, Page 35, line 15
24 -- can we agree that, to your knowledge, OneBeacon Insurance Company has the authority to determine the claims of York on automobile insurance issues?
A. When you say determine them, you mean handle them, settle them?
Q. Yes.
A. Yes.
And the -- if OneBeacon Insurance Company settled a claim for whatever amount of dollars, "X" amount of dollars --
A. Uh-hum.
Q. -- and they sent the insured a check to pay the claim --
A. Uh-hum.
Q. -- after it's settled --
A. Uh-hum.

[9] **Deposition of Kathleen Ahearn, February 24, 2001**, Page 4, lines 21-22.Page 11,13-20, Page 15, line11-13.; Page 16, line 16-20. Page 17, lines 14-24, Page 21, lines 8-11.Page 27, Page 29, lines25, Page 30, 1-7., Page 35, lines 22-25.

.
Q. By whom are you employed?
A. OneBeacon Insurance Company.
***Q. At what point in time did you recall first becoming familiar with the claims of Joseph Laplante and James Laplante.
A.I don't remember the date.
Q. Okay. You maintain a file on that accident?
***A. I would have had a file assigned to me.
Q.Did you have communications in writing with Joseph Laplante and James LaPlante?
A. Yes, I did.
Q.Did you pay Mr. Laplantge a $5000 check under the policy that's set forth in Exhibit 1?
***A. Yes.
Q. Who assigned the claim of Joseph and James Laplante to your?
A. I believe it would have been Ed Facchetti.
Q***was that Facchetti your supervisor?
Yes.
Q. And, would he be a member of the Claims Department of OneBeacon Insurance Company?

[10]and staff through various ceding agreements[11], powers of attorney, and common re-insurers.

---

A. Currently, No.
Q. Then.
A. The, yes.
Q. Are you the Kathleen Ahearn that wrote a letter to Michael Eagan regarding the claim of James Laplante on June 15, 2004.
A. Yes.
Q. On the bottom of the page, do you see the phrase "One Beacon Insurance Group Claims Department"
A. Yes.
Q. Who gave you this letterhead to write upon?
A. It comes in boxes.
***Q Is it your position that this letterhead is erroneous?
Mr. Bengston: I object.
That is not my position.
***Q. Okay. And you came to know that term (OneBeacon Insurance Group) through your employment with OneBeacon Insurance Company, correct?
A. Correct.

[10] **Deposition of Steven P. Schroeder, February 24, 2006**, Tr. Page 4, lines 16-25, Page 5, lines 1-18. Page 6, Lines 8-10, Tr. P.7, line 13-25, Tr.8. lines 1-4.
Q.***By Whom are you employed.
A.OneBeacon Insurance Company.
Q. What is your title?
A. Claims Examiner.
Q. What is the scope of your work.
A. I handle adjustment of claims in the states of Rhode Island and homeowner files in the states of Rhode Island and Connecticut for One Beacon Insurance Company.
***Q.Do you remember at what point in time you first became aware of this claim?
Q. Within the last three or four months.
*** Q. Are you familiar with name OneBeacon Insurance Group?
A. Yes.
*** A. There is a Claims Department in this Building.
***A. Underwriters?
Q. ***York Insurance Company of Maine would be an underwriting company, would it not.
A. Yes
***A. The claims are handled out of this office if a loss occurred in Rhode Island or Connecticut.
***Q. The job description of adjuster for litigated cases, could you describe that in a little more detail, what you do, what you're supposed to do by your Company.
Mr. Bengston: I object. ***
A. Evaluate the claims in those states on liability and damages and settle them or don't settle them.
***

[11] **<u>Deposition of Dennis Smith</u>**, 2/21/06 Page 28, line 24-25,29, lines 1-12 1. 24:
Is there an agreement that covers claims handling?
Q. Yes.
A. Is that your question?
Q. Yes.
A. Yes.
Q. And could you briefly describe it?
A. It's 100 percent reinsurance agreement by which York Insurance Company of Maine **cedes 100 percent of its insurance business to OneBeacon Insurance Company**, which in turn assumes all of that

OneBeacon Insurance Group, LLC is a separate legal entity from OneBeacon Insurance Group[12], [13], and is a member of OneBeacon Insurance Group[14] which is a group of

---

business in exchange for receipt of premiums and it handles the claims on policies written by York Insurance Company of Maine. (Emphasis Added).

[12] **Deposition of Dennis Smith** 02-21-06-(Pages 19:21 to 23:6)

Am I correct that you as the secretary or assistant secretary of these various insurance companies that are **members of OneBeacon Insurance Group**, that you are familiar with their legal structure?
A. Yes.
*** Q. All right. Let's use the most recent report of York Insurance Company of Maine. I would like you to take a look at the structure --
A. Uh-hum.
Q-- that's set forth in the York Insurance Company of Maine's examination by the Commissioner of the State of Maine.
A. Uh-hum.
Q. If we could start at the bottom and move up the chart --
A. Uh-hum.
Q. -- is the **York Insurance Company of Maine** information that's -- that's included in the block on the bottom accurate?
A. The name is correct and it is a Maine corporation.
Q. Okay. And the next level is what?
A. OneBeacon America Insurance Company.
That's the correct name and that is a Mass. corporation.
Q. What is the next level?
A. OneBeacon Insurance Company, a Pennsylvania corporation, that's correct.
Q. What's the next company?
A. **OneBeacon Insurance Group LLC** and that is -- that's the correct name, that is a Delaware limited liability company.
Q. Are the legal relationships that are attempted to be displayed on that chart by the Insurance Commissioner of Massachusetts correct, to your knowledge?
*** Q. Now, can you -- but you have knowledge of what their legal relationship is, correct?
A. Correct. And we are talking the end of '04, is that right? Yes.
Would I be correct in assuming here in February of 2006 that any of those relationships have not changed?
A. Well, by relationships I assume you mean that a box below another box means 100 percent ownership of one company by another, and that is correct. York being 100 percent owned by OneBeacon America, which is 100 percent owned by OneBeacon Insurance Company, which is 100 percent owned **by OneBeacon Insurance Group LLC**. The implication here from this chart is that **OneBeacon Insurance Group LLC** is a direct wholly owned sub of White Mountains, White Mountains Insurance Group Limited. That's not correct. There are several other companies in between but it does say it's an abbreviated organizational chart, so accepting that there's an indirect ownership there, **it is correct**. The LTD is -- I believe is – is initial caps only, capital "L" and I believe there is a period after the "D", but other than that, **it's essentially correct**, and it is a Bermuda corporation.

[13] **Deposition of Dennis Smith** 02-21-06 (Page 23:13 to 23:15) (Emphasis Added).

Q. Am I correct that OneBeacon Insurance Group LLC does not sell insurance?
A. That is correct.

[14] **Deposition of Dennis Smith** 02-21-06,(Pages 6:24 to 7:5)

***our entire group of companies was purchased on June 1st, 2001 by subsidiaries of White Mountains Insurance Group Limited and our group name, the group name was changed on or about that date to the **OneBeacon Insurance Group** or OneBeacon or OneBeacon Insurance. They are all used interchangeably.

underwriters, subsidiary holding companies, and re-insurers, with overlapping directors and officers[15], whose interests are owned directly and indirectly by White Mountains, LTD, a New York Stock Exchange Insurance Holding Company.

- **The Communications of James Laplante and Joseph Laplante with OneBeacon Insurance Group Demonstrate that the Defendant Had Sole and Exclusive Power to Determine Their Claims.**

The below referenced documents, described and authenticated in the Affidavit of Joseph Laplante (separately submitted) demonstrate both the juridical existence of OneBeacon Insurance Group, and that it was the entity that, in fact, and by its own direction, ultimately controlled Defendant's contractual relationship with the Plaintiff, as well as with Joseph Laplante.

Joseph Laplante's Affidavit (and attached Exhibits) set out contested issues of material fact requiring denial of the Motion for Summary Judgment.

---

[15] **Deposition of Dennis Smith** 02-21-06(Pages 26:22 to 29:12)
Q. Okay. Do you know who are the directors of York Insurance of Maine?
A. I do.
Q. And who are they?
THE WITNESS: Currently?
MR. McKENNA: Yes.
A. I may not get them all right. I'd have to double-check my own lists but I'm just -- I'm not using full names I just -- Alex Archimedes, Drew Carnase, Tom Forsyth, Paul McDonough, **Mike Miller**, Pat Lavoie, Mike McSally. I'll offend some people by forgetting them. Tom Schmitt. I'm sure I'm leaving a couple out. Those -- those names come to mind. Roger Singer.
Q. Am I correct that those gentlemen, some of those gentlemen, perhaps all, are also directors of other insurance companies within the OneBeacon Insurance Group?
A. Some are.
Q. **Mr. Michael Miller**, does he also hold other directorships?
A. Yes.
Q. And is he -- is he also the president of OneBeacon Insurance Group LLC?
A. Yes.
Q. And is he the president of any other entity?
A. Yes.
Q. Which entities?
A. Several.
Q. Is he the president of the company for which you work, OneBeacon Insurance Company of
4 Pennsylvania?
Mr.BENGTSON: I object.
A. Of Pennsylvania is not part of the name but he is president of OneBeacon Insurance Company.

Joseph Laplante, Plaintiff's father, was the only passenger in the motor vehicle on the day of Plaintiff's accident (February 23, 2003) that gave rise to this litigation. As a consequence of that accident, Joseph Laplante suffered serious, and permanent, injury.

Because he was a covered individual under Plaintiff's insurance policy, Joseph Laplante thereafter made demand for payment of policy benefits to which he believed he was entitled.

As shown in Joseph Laplante's Affidavit, Defendant OneBeacon Insurance Group both adjusted Joseph Laplante's claim, and acted in its own name, to (both explicitly and implicitly) deny Joseph Laplante's, and Plaintiff James Laplante's, further claims on Defendant OneBeacon Insurance Group, and other identified entities within that Group (CU York Insurance Company, and OneBeacon Insurance Company--- a Pennsylvania Corporation).

Exhibit A to Joseph Laplante's Affidavit (hereafter "Affidavit") is a March 17, 2005 letter, signed by "Donna Cotter, Claims Examiner". Said letter, on the bottom of its first page, bears a pre-printed identification of "OneBeacon Insurance Group".

Ms Cotter wrote to Joseph Laplante "[o]n behalf of the OneBeacon Insurance Group ('OneBeacon') **and** CU York Insurance Company ('York')...[emphasis added]..." respecting a Massachusetts consumer protection claim of bad faith (MGLA Ch. 93A) made by Joseph Laplante against OneBeacon Insurance Group **and** York.

Ms. Cotter, "[o]n behalf of OneBeacon [OneBeacon Insurance Group] and York" then denied that 93A claim (Page 1) and on Pages 2 and 3 of Exhibit A, Ms. Cotter continued to refer to both "OneBeacon" [OneBeacon Insurance Group] **and** "York" interchangeably, and acting in concert with respect to the matters at issue.

On Page 3 of Exhibit A, Ms Cotter wrote: "[b]ased on what has been documented to date, OneBeacon [OneBeacon Insurance Group] **and** York, by this letter, hereby offer the sum of $200,000 in full and final settlement of all claims you have against James Laplante **and** against OneBeacon [OneBeacon Insurance Group] **and/or** York **arising out of or resulting from the accident of February 23, 2003 and the events subsequent thereto** [emphasis added].".

Page 3 of Exhibit A continues: "[a]s stated above, OneBeacon [OneBeacon Insurance Group] **and** York continue to maintain that **you are not entitled** to coverage under the Uninsured Motorist Coverage [**intrapolicy stacking**]. It is a condition to payment that you execute a Release in a form acceptable to OneBeacon [OneBeacon Insurance Group] **and** York [emphasis added].".

Exhibit A finally concludes on Page 3: "[i]n making this offer, OneBeacon [OneBeacon Insurance Group] **and** York specifically reserve and do not waive all of their rights and defenses with respect to the claim which you have asserted, whether set forth herein or not and whether presently known to them or not [emphasis added].".

Exhibits F, G, and I, attached to Joseph Laplante's Affidavit, are copies of letters received by him from Keith Aten, Esq. who, in his letter dated August 10, 2004 (Affidavit, Exhibit F) acknowledges that he "...represents OneBeacon Insurance Group ('OneBeacon') with respect to the above-captioned claim." Mr. Aten then further represents in Exhibit F that "...OneBeacon [OneBeacon Insurance Group] [is] "evaluating" [Joseph Laplante's] claim."

Exhibit F closes with an instruction to Joseph Laplante that documentation supporting his claim should be sent "…to Kathleen Ahern, **OneBeacon Insurance Group Claims Department**, P.O. Box 712, Foxboro, MA 02035.", emphasis added.

Joseph Laplante was then instructed in Exhibit F that all "…other questions regarding the status of [his] claim [were to be directed] to… [Keith Aten, Esq., attorney for OneBeacon Insurance Group]".

Exhibit G attached to Joseph Laplante's Affidavit is an August 10, 2004 letter from Keith Aten, Esq., OneBeacon Insurance Group's attorney, representing that "OneBeacon Insurance Group will adjust [Joseph Laplante's] claim…"… "…arising from the February 23, 2003 automobile accident.", emphasis added.

Exhibit I to the Affidavit is a December 8, 2004 letter from Keith Aten, Esq. that has attached to it a "RELEASE OF UNINSURED MOTORIST/ UNDERINSURED MOTORIST CLAIMS" prepared and drafted by "OneBeacon Insurance Group" (letter, Page 1). Mr. Aten further represented in Exhibit I that "…**OneBeacon Insurance Group** is in the process of settling **James Laplante's** uninsured motorist claim….", emphasis added, and that **Joseph Laplante's** execution of the letter's enclosed, above-described, Release "…will assist OneBeacon [OneBeacon Insurance Group] in settling the uninsured motorist claim with **James Laplante.**" emphasis added.

The December 8, 2004 letter's attached Release (Exhibit I) prepared by Defendant contains the following material representations of fact:

That in return for Joseph Laplante waiving any claim uninsured/underinsured motorist benefits under the policy at issue, "… CU YORK INSURANCE COMPANY

and/or ONEBEACON INSURANCE GROUP… is entitled to make an offer to **and to pay James S. Laplante [$300,000.00 the policy limit]"** emphasis added.

Exhibits B, C, D, E, and H attached to Joseph Laplante's Affidavit all reference, by pre-printed identification, that Defendant OneBeacon Insurance Group is a functioning and participating agent with respect to the resolution of the claims (including the stacking claim at issue here) of both Joseph **and** James Laplante.

- **OneBeacon Insurance Group, as a control group for its members, is liable to the Defendant for the actions of its members.**

OneBeacon Insurance Group is a "single business enterprise"[16], 1 Fletcher Cyclopedia of Private Corp. § 43, Parent and subsidiary corporations.[17] OneBeacon Insurance Group of corporations, with common ownership,[18] is an artificial organization, which, through its reinsurance agreements and common directors and ownership acts as

---

[16] **Deposition of Dennis Smith**, 2/21/06 Page 38, line 25, page 39, lines 1-18.
A. If we could do it, **we'd operate as one 1 single company** but that's not -- you can't do that in 50 states.
Q. But to the extent possible, in the legal area with which you are familiar, these groups try to exchange services?
A. Correct.
Q. Where you've done –
A. In a general sense.
Q. -- you've done legal work for more companies than your own, correct?
MR. BENGTSON: I object.
A. Well, they're all my own in the sense that they're all -- I only have one employer as a technical matter --
Q. Yes.
A. -- but I'm secretary of all of the companies. I mean they're all **within the same common ownership**. (Emphasis Added).

[18]Certain Interested Underwriters v. Layne, 26 F.3d 39 (6th Cir. 1994). However, **an unincorporated association**, such as a labor union or a partnership, has no separate legal identity so **its citizenship, at least for the purposes of diversity jurisdiction, is the citizenship of each of its members**. *See,e.g., Carden v. Arkoma Assocs.*, 494 U.S. 185, 110 S.Ct. 1015,108 L.Ed.2d 157 (1990); *United Steelworkers of Am. v. R.H.Bouligny, Inc.*, 382 U.S. 145, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965); *Chapman v. Barney*, 129 U.S. 677, 9 S.Ct. 426, 32 L.Ed.800 (1889). Finally, a plaintiff seeking to bring a case into federal court carries the burden of establishing diversity jurisdiction. *See* Fed.R.Civ.P. 8(a); *Ohio Nat'l Life*, 922 F.2d at 321; *Kaiser v. Loomis*, 391 F.2d 1007, 1010 (6th Cir. 1968).

the "alter ego" of its various members,[19] and is directly liable for its members, which it completely controls and dominates.

---

[19] **1 Fletcher Cyclopedia of Private Corp. § 43§ 43. Parent and subsidiary corporations**
***However, in comparison, if a parent's exercise of dominion and control over its subsidiary defeats the payment of its just obligations, the theory of separate corporate existence will be discarded even in the absence of fraud.[FN9] The main point is that, although corporations are related, there can be no piercing of the veil without a showing of improper conduct.[FN10] Factors considered by federal courts in determining whether to hold a parent corporation accountable for a subsidiary's liabilities in federal question cases include whether the parent and subsidiary lacked independence, whether the principals conducted their affairs with a requisite degree of fraudulent intent and whether failure to pierce the veil would work substantial injustice.[FN10.50] ***For purposes of piercing the corporate veil in order to hold a parent liable for its subsidiary's acts, the terms "instrumentality" "alter ego" and "agent" are sometimes deemed equivalent and interchangeable.[FN11] Many cases disregard the corporate entity where it is so organized and controlled, and its affairs are so conducted, that it is merely an instrumentality, agency, conduit, or adjunct of another corporation.[FN12] The control necessary to invoke the "instrumentality rule"[FN13] is not mere majority or complete stock control but such domination of finances, policies and practices that the controlled corporation has, so to speak, no separate mind, will or existence of its own and is but a business conduit for its principal.[FN14] But ownership of all the stock of a corporation coupled with common management and direction does not operate as a merger of the two corporations into a single entity.[FN15] However, each additional bit of evidence, such as ownership by one corporation of all or majority of the stock of another,[FN16] or the fact that the corporations have common officers and directors,[FN17] or both, tends to show too close or too direct relationship between corporations, and disregard by one corporation of the normal corporate process or formalities in regard to the other, undercapitalization[FN18] of the subsidiaries, commingling of funds[FN19] or holding out by one that the other is a department of its business or that it stands behind it—all these additional bits of evidence favor a finding of parental liability when viewed together.[FN20]
Other factual criteria that will be examined to determine if a pierce of the corporate veil is warranted so to hold a parent liable for a subsidiary's breach includes: whether both corporations are controlled by the same person; whether the subsidiary operates out of the same facilities as the parent; whether the subsidiary's contracts are performed by employees of the parent; whether the parent owned all of subsidiary's stocks; whether the subsidiary had ever been capitalized; whether the funds earned by the subsidiary are directly deposited into the parent's bank accounts; whether the subsidiary's financial obligations are paid by checks drawn on the parent's bank account; and whether the subsidiary has its own, separate, bank accounts.[FN20.10]
Common officers and management are not incompatible with separate entities, or conclusive of identity;[FN20.20] nor is a difference in officers and shareholder conclusive of distinct entities.[FN20.30] **The "single business enterprise" doctrine may also be defined as separate corporations operated with integrated resources in pursuit of a single business purpose.**[FN20.35] The "single business enterprise" theory is an equitable doctrine applied to reflect partnership-type liability principles when corporations integrate their resources and operations to achieve a common business purpose.[FN20.36] **Courts will refuse to allow the internal insulation of liability attempted by an owner's excessive fragmentation of a single business entity or "single enterprise" into separate corporations to contravene the rights of a plaintiff-creditor,**[FN20.40] at least where that plaintiff is an involuntary creditor.[FN20.50] Under the "identity" theory, the corporate veil will be pierced if there is such a unity of interest and ownership that the independence of the corporation in effect ceases or has never begun, and where an adherence to the fiction of separate identity would defeat justice and equity arising out of an operation conducted by one corporation for the benefit of the whole enterprise.[FN20.60] Whether the parent so dominates the activities of the subsidiary as to establish an agency relationship[FN21] is a question of fact determined primarily by the degree of control the parent has over the subsidiary.[FN22] Generally, for the parent to be held liable for the subsidiary's acts this control must be actual, participatory, and total.[FN23] However, **the parent may also be liable under an agency theory[FN24] where there is active and direct participation by**

York Insurance Company of Maine is not a separate and independent corporation (albeit it is the initial underwriter of the Plaintiff's contract of insurance). It is the same entity within the OneBeacon Insurance Group, which denied Mr. Laplante's claim and breached his contract. The insurance contract had been ceded to another member of the Group, One Beacon Insurance Company, and had been reinsured by other corporate members of OneBeacon Insurance Group, whose internal positions within the Group are often re-positioned, depending on convenience and circumstances.

York Insurance Company of Maine, a member of the One Beacon Insurance Group, has "ceded" its automobile insurance business, to OneBeacon Insurance Company of Pennsylvania.[20], another member of the insurance group, which has, in turn, denied Plaintiff's claims.

James Laplante, as Plaintiff, claims that it is the members of Defendant, OneBeacon Insurance Group, such as OneBeacon Insurance Company of Pennsylvania (which controlled and dominated, in fact York Insurance Company of Maine) and which wrongfully denied Mr. Laplante's claim for stacking under Rhode Island Law (the locus

---

**the representatives of one corporation, apparently exercising some form of pervasive control, in the activities of another and there is some fraudulent or injurious consequence of the intercorporate relationship.**[FN25] ***In order for the acts of the subsidiary to confer jurisdiction[FN29] over the parent corporation, it must be established that the nonresident parent corporation exercises control over its subsidiary's activities in the state.[FN30] ***A contract in terms and in name with one corporation cannot be treated as that of both, if they are in law separate entities,[FN31] and so dealt with;[FN32] but a contract by either corporation may be such in terms as to cover and apply to both corporations; so that both are regarded for that purpose, although one only is sued.[FN33] **One corporation may be treated as the alter ego of another corporation to which it has conveyed or leased property so as to prevent the former from avoiding its contractual obligations to a third party**[FN34] or an employee.[**FN35The holding corporation may be regarded as the party liable on a contract made by the subsidiary,[FN37]** or affected by defenses to it,[FN38] or charged with the subsidiary's frauds.[FN39] (Emphasis Added)

[20] **Deposition of Dennis Smith**, 2/21/06 Page 17, lines 18-23. A. York reinsures 100 percent of its business with OneBeacon Insurance Company, if that's what you're asking.
21 Q. And OneBeacon Insurance Company is the company by whom you are employed?
23 A. Correct.

of the accident) and under Pennsylvania law, the corporate home of a group entity which denied his claims.

It was OneBeacon Insurance Group that held itself out to the Plaintiff as being the entity that was making the decisions on the pending claim for coverage on a form contract that has the name and logo of OneBeacon Insurance Group on each page of his contract.

Although York Insurance Company of Maine, a member of OneBeacon Insurance Group, is identified on the Plaintiff's contract as his underwriter, that underwriting contract was ceded to OneBeacon Insurance Company, where employees of that entity, using the letterhead of One Beacon Insurance Group[21], mishandled his claim for uninsurance coverage and incorrectly limited his recovery.

- **OneBeacon Insurance Group is Individually, Jointly, and Severally Liable to the Plaintiff, as are its member corporations, OneBeacon Insurance Company and York Insurance Company of Maine.**

The depositions taken of Defendant's employees demonstrate that York Insurance of Maine has had less to do with the decision to deny coverage to the Plaintiff than the cheerleaders for the New England Patriots had with the Patriot's record. York was not on the field. It did not carry the ball, and did not play defense.

It ceded its claims and premium functions to OneBeacon Insurance Company of Pennsylvania, the apparent managing member of the OneBeacon Insurance Group.

---

[21] First Set of Admissions by OneBeacon Insurance Group, March 16, 2006, admitted as to printed copy only, (a)Letter of August 12, 2002 from OneBeacon Insurance Group without letterhead to Corrina Brown and James S. Laplante; Letter of March 31, 2003, Carl Kallenberg on OneBeacon Insurance Group letterhead to Joseph Laplante related to his claim as passenger in same accident;(c)Letter of March 31, 2003 from Carl Kallenberg on OneBeacon Insurance Group to James Laplante; (d)Letter of June 15, 2004 from Kathleen Ahearn to Laplante's Attorney, Michael Egan; (f) Letter of June 28, 2004 from Kathleen Ahearn to Joseph Laplante and Attorney, Christopher Healy; (g) Letter of July 9, 2004 from Kathleen Ahearn to Joseph Laplante on same accident.

Although Plaintiff would not otherwise object to adding York Insurance Company (the initial underwriter) as a party Defendant, along with OneBeacon Insurance Company of Pennsylvania (the corporation to whom Plaintiff's claim was ceded) as another party Defendant[22], along with OneBeacon Insurance Group, those additions may not solve the Constitutional issue respecting the existence of diversity.

First, diversity questions must be strictly construed *McSparran v. Weist*, C.A.3 (Pa.) 1968, 402 F.2d 867, certiorari denied 89 S.Ct. 1739, 395 U.S. 903, 23 L.Ed.2d 217 See, also, *Buell v. Sears, Roebuck & Co.*, , 321 F.2d 468; C.A. 10 (Colo.)1963; *Janzen v. Goos*, , 302 F.2d 421;(C.A.8 Neb.1962);Trust Co. of Chicago v. Pennsylvania R. Co., .C.A.Ill.1950, 183 F.2d 640, 21 A.L.R.2d 238; *Wolgin v. Atlas United Financial Corp.*, D.C.Pa.1975, 397 F.Supp. 1003, affirmed 530 F.2d 963, 966. *Romanella v. Hayward*, , 114 F.3d 15. (C.A.2 , Conn. 1997).

Second, diversity and federal question jurisdiction must be determined at the time of removal. If averments by "OneBeacon Insurance Group", made on December 2, 2005, and January 17, 2006, are correct, this suit should not have been removed on November 30, 2005. The averments made in Defendant's January 17, 2006 Motion to Dismiss touching on "OneBeacon Insurance Group" clearly contradict its November 30, 2005 Federal Court Petition to Remove.

---

[22] Fed.R.Civ.P. 19(b) provides that, where a necessary party cannot be made a party to a lawsuit, "the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable."

As provided in_28 U.S.C. § 1441(a) and (b)[23] , to support a removal proceeding, diversity must have existed at the time the initial complaint was filed *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 570, 571 (2004)[24], [25]

"OneBeacon Insurance Group" cannot now attempt to create diversity, after the fact of removal, by now substituting a Defendant in Federal Court, especially in a case where the current, single Defendant, argues that it does not exist.

If this Court does not have jurisdiction over a non-existent entity in the first place, how does it gain jurisdiction in the third place, sufficient to dismiss a state court Complaint, over which it did not have jurisdiction in the in the first place? If this Court does not have jurisdiction over a non-existent entity in the first place, then how does it gain jurisdiction and authority in the third place, sufficient to amend Plaintiff's Verified state court Complaint? One party does not have a right to amend another's pleadings.

---

[23] ***28 U.S.C. § 1441***. Actions removable generally.

(a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.

(b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

[24] . *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 570, 571 (2004) It has long been the case that "the jurisdiction of the court depends upon the state of things at the time of the action brought." *Mollan* v. *Torrance*, 9 Wheat. 537, 539 (1824). This time-of-filing rule is hornbook law (quite literally)[fn2]taught to first-year law students in any basic course on federal civil procedure. It measures all challenges to subject-matter jurisdiction premised upon diversity of citizenship against the state of facts that existed at the time of filing — whether the challenge be brought shortly after filing, after the trial, or even for the first time on appeal. (Challenges to subject-matter jurisdiction can of course be raised at any time prior to final judgment. See *Capron* v. *Van Noorden*, 2 Cranch 126 (1804).)

We have adhered to the time-of-filing rule regardless of the costs it imposes."

[25] *Bank One, Texas, N.A. v. Montle*, 964 F.2d 48, 50, ( C.A.1 (Mass.),1992).Federal jurisdiction based on diversity of citizenship requires that the matter in controversy be between citizens of different states. 28 U.S.C. § 1332(a)(1). For purposes of diversity, a person is a citizen of the state in which he is domiciled. **Domicile is determined as of the time the suit is filed, and once diversity jurisdiction is established, it is not lost by a later change in domicile.***Lundquist,* 946 F.2d at 10; *Valedon Martinez,* 806 F.2d at 1132;*Hawes v. Club Ecuestre El Comandante,* 598 F.2d 698, 701 (1st Cir.1979).

- **OneBeacon Insurance Group has not proven its members have complete Diversity, and Cannot Prove Federal Question Jurisdiction, if it claims it did not exist at the time of Removal.**

The United States Constitution, Article III, §2,[26] provides that the judicial power shall extend to all case arising under the Constitution and between citizens of different states. Defendant's removal petition, at Paragraph 3, avers that the Complaint is removed pursuant to 28 U.S.C. §1332[27] because there exists complete diversity between the Plaintiff and Defendant. Plaintiff agrees that the amount in controversy exceeds the sum of seventy five thousand dollars ($75,000).

Plaintiff disagrees that complete diversity existed at the time of removal, or can be created by additional acts. James Laplante does not agree with Defendant's claim that OneBeacon Insurance Group had, at the time of removal (and now) no legal (juridical) existence. For, if this were the case, the Defendant OneBeacon Insurance Group would be in the unprecedented situation of an entity with rights, but with no responsibilities.

If Defendant did not exist at the time of removal as claimed, it then had, and now has, no standing to remove and ask for additional affirmative relief here (post-removal amendment of pleadings). York Insurance Company of Maine has not moved to intervene.

---

[26] U.S. Const. Article III, §2.. The judicial power shall extend to all cases, in law and equity, arising under this Constitution, the laws of the United States, ***to controversies between***-between citizens of different states***.

[27] 28 USC § 1332 (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between - (1) citizens of different States;

Nevertheless, if OneBeacon Insurance Group did exist at the time of removal, and now exists, as argued by Plaintiff, it is Defendant's burden here to prove, as a matter of law and fact, that citizenship of its members is diverse. How does a party that it is claimed does not exist prove that other parties enjoy complete diversity?

- **Alleged Federal Question Jurisdiction Is Insufficient for this Court to Maintain Control of the Predominate State Law Questions.**

Defendant, OneBeacon Insurance Group, at Paragraph 8 of its Removal Petition avers (as the basis of removal) the original jurisdiction provisions of 28 U.S.C. §1441(a) and (b).[28]

While Plaintiff agrees that he has averred violations of the U.S. Constitution in his state complaint, he denies, at this point, that this Honorable Court has jurisdiction if the Honorable Court agrees with Defendant that, at the time of filing, the Defendant did not exist.

If the Defendant did not exist as a juridical entity, then the Defendant, obviously, did not have standing to remove the complaint to the U.S. District Court in the first place.

If averments by "OneBeacon Insurance Group", made on December 2, 2005, and January 17, 2006 claiming non-existence are correct, this suit should not, and could not,

---

[28] 28 USC § 1441 Actions removable generally (a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.

(b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable **without regard to the citizenship or residence of the parties. Any other such action** shall be removable **only if none of the parties in interest properly joined** and served as **defendants is a citizen of the State in which such action is brought.**

(c) Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with **one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates (Emphasis Added).**

have been removed on November 30, 2005. Rather, OneBeacon Insurance Group, in the state court, should have filed an unadorned Motion to Dismiss, based on its alleged non-existence. It cannot now "bootstrap" its way into a dismissal/summary judgment here by affirmatively arguing that Plaintiff's Complaint must now be amended to include other parties.

To support a removal petition, diversity must have existed at the time the initial petition was filed *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 570, 571 (2004)[29]. 28 U.S.C. § 1441(a) and (b) [30] "OneBeacon Insurance Group" cannot attempt to create diversity, after the fact of removal, *PayPhone LLC v. Brooks Fiber Communications of Rhode Island*, 126 F.Supp.2d 175 (D.R.I.,2001.) by now substituting itself by way of dismissal with a new/substitute defendant to be added.

---

[29] . *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 570, 571 (2004) It has long been the case that "the jurisdiction of the court depends upon the state of things at the time of the action brought." *Mollan* v. *Torrance*, 9 Wheat. 537, 539 (1824). This time-of-filing rule is hornbook law (quite literally)[fn2]taught to first-year law students in any basic course on federal civil procedure. It measures all challenges to subject-matter jurisdiction premised upon diversity of citizenship against the state of facts that existed at the time of filing — whether the challenge be brought shortly after filing, after the trial, or even for the first time on appeal. (Challenges to subject-matter jurisdiction can of course be raised at any time prior to final judgment. See *Capron* v. *Van Noorden*, 2 Cranch 126 (1804).) We have adhered to the time-of-filing rule regardless of the costs it imposes."

[30] ***28 U.S.C. § 1441***. Actions removable generally.

(a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant
or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. For purposes of removal under this chapter, the citizenship of defendants
sued under fictitious names shall be disregarded.

(b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

The Defendant simply has no basis or authority to affirmatively **now amend** Plaintiff's state court Verified Complaint[31] to change the named Defendant, in an attempt to create diversity, after the fact of its improper Removal Petition.

Insurance groups may not pick and chose among their members, after the fact, to create diversity.[32]

As a consequence, OneBeacon Insurance Group's Removal Petition should be denied/dismissed, and this matter should be remanded to the Kent County Superior Court.

**Alternatives Approaches.**

However, if this Honorable Court, nevertheless, decides that original subject matter jurisdiction in this Court exists respecting Plaintiff's U.S. Constitutional claims, it, obviously, may decide those Federal claims.

Yet, the Court still may decide to remand predominate state law question to the State Court, pursuant to 28 U.S.C. §1441(c)[33] and 28 U.S.C. §1331.[34]

The Plaintiff, in such case, would urge the Court to remand the remainder of the state court issues to the Kent County Superior Court for further litigation.

---

[31] Fed. Civ. 15. "*** a party may amend the party's pleading only by leave of court or by written consent of the adverse party.

[32] *Simpson v. Providence Washington Ins. Group*, 608 F.2d 1171,*1174*, (9th Cir. 1979). We acknowledge that assignments of causes of action between parents and subsidiaries are presumptively ineffective to create diversity jurisdiction. Prudential Oil Corp. v. Phillips Petroleum Co.,546 F.2d 469, 475 (2d Cir. 1976); Green & White Construction Co. v. Cormat Construction Co.,361 F. Supp. 125, 127-28 (N.D.Ill. 1973).

[33] 28 USC § 1441(c) Whenever a separate and independent claim or cause of action within the jurisdiction conferred by **section 1331** of this title is joined with **one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates (Emphasis Added).**

[34] 28 USC § 1331 Federal question The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

While Plaintiff does not agree that this matter involves citizens of different states, he agrees that there might be a U.S. Constitutional issue involved in recognition of the stacking laws of the State of Rhode Island, and the Commonwealth of Pennsylvania by the State of Vermont in interpreting the stacking provisions (on uninsured motorists and extraterritorial coverage) contained within the Plaintiff's insurance contract.

Paragraphs 36 and 50 of Plaintiff's Verified Complaint aver that James Laplante, as a then former domiciliary of Vermont, and a then temporary resident of Rhode Island when his accident occurred in Rhode Island, was subject to protection of the Full Faith Credit Clause, and Privilege and Immunities Clauses of the United States Constitution, Article §1 and §2.[35]

If the Court accepts those averments as sufficient grounds to grant federal question jurisdiction, then the only other question remaining is whether, at the time of its filing of the petition to remove, Defendant, OneBeacon Insurance Group, was a citizen of Rhode Island. However, if OneBeacon Insurance Group did not then exist, it could have no standing to remove the case, neither on the basis of diversity, nor because a federal question was then raised.

- **Venue is also an issue, which the Defendant has not proven.**

Defendant removed to the venue of the U.S. District Court of Rhode Island, apparently on the basis that Rhode Island is the " judicial district which a substantial part of the events or omissions giving rise to claim occurred" pursuant to 28 USC §1391(a)(2)

---

[35] U.S. Const. Article IV, §1. Full faith and credit shall be given in each state to the **public acts**, records, and judicial proceedings of every other state. And the Congress may by general laws prescribe the manner in which such acts, records, and proceedings shall be proved, and the effect thereof. Article IV. §2. **Section 2.** The citizens of each state shall be entitled to all privileges and immunities of citizens in the several states. (Emphasis Added).

and because a corporate defendant is determine to be a resident in which it is subject to personal jurisdiction at the time the action occurred, pursuant to 28 U.S.C. §1391(c)[36].

Plaintiff agrees that Rhode Island is the locus where the events occurred, but it does not agree that OneBeacon Insurance Group[37] has proven the existence of complete diversity sufficient to justify the removal in the first instance.

**Sequence Issues:**

If this Honorable Court decides to retain the entire case within its jurisdiction, the Plaintiff urges the Court to deny Defendant's Motion to Dismiss (now reduced to Summary Judgment) Plaintiff's claims against OneBeacon Insurance Group, and grant Plaintiff's separately filed Motion to add York Insurance Company of Maine, and

---

[36] 28 U.S.C.A. § 1332 **(c)** For the purposes of this section and section 1441 of this title-- **(1)** a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business, **except that in any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is *not joined as a party-defendant*, such insurer shall be deemed a citizen of the State of which the insured is a citizen, as well as of any State by which the insurer has been incorporated and of the State where it has its principal place of business;** and **(2)** the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent, and the legal representative of an infant or incompetent shall be deemed to be a citizen only of the same State as the infant or incompetent.

[37] **Deposition of Dennis Smith,Page**1, lines 17-24, Page 12, lines 1-14:

17 Is York Insurance Company of Maine a member of OneBeacon Insurance Group?
19 A. Yes.
20 Q. You have used the term insurance group with reference to prior owners and to present
22 owners. Could you tell me what the term insurance group means in the insurance business --
24 MR. BENGTSON: I object. Go ahead.
25 Q. -- as you use it? A. As I use it --
2 Q. Yes.
3 A. -- it means a group made up of individual underwriting companies that write insurance under
5 common ownership.
6 Q. Okay. So when you were mentioning the prior -- the predecessor group, you were referring
8 to a group of insurance companies that had common ownership?
10 A. Correct.
11 Q. And now --
12 A. Not necessarily 100 percent ownership but --
14 Q. Close to it?
15 A. Close.

OneBeacon Insurance Company (originally organized in the Commonwealth of Pennsylvania) as additional party Defendants.

Plaintiff's objection to the removal of this matter, and Defendant's motion to substitute itself with a new Defendant, York Insurance Company of Maine, have now been converted to Summary Judgments by this Honorable Court.

This case was initiated by Defendant OneBeacon Insurance Group, in its Petition for Removal, filed on November 30, 2005, at Paragraph 3, wherein it claimed that (necessarily as a matter of law) at the time of removal, there was complete diversity existing between Plaintiff, James Laplante, who now is an admitted resident of Vermont, and then Defendant, OneBeacon Insurance Group, an unincorporated insurance group, which Defendant, in its pleadings, claims does not exist.

Thereafter, OneBeacon Insurance Group further claims (necessarily as a matter of law) that it should be allowed, over Plaintiff's objection, to dismiss itself from this lawsuit, and substitute York Insurance Company of Maine, and ostensibly thereby **now** create the complete diversity that is otherwise required for removal.

York Insurance Company of Maine is a member of OneBeacon Insurance Group, which entity was the initial underwriter of the insurance contract with James Laplante for uninsured motorist coverage.

Pursuant to agreements among and between members of present Defendant OneBeacon Insurance Group, York Insurance Company of Maine, **after** issuance of the insurance contract at issue here, ceded James Laplante's contract to another member of OneBeacon Insurance Group: OneBeacon Insurance Company (which was created/incorporated in the Commonwealth of Pennsylvania).

Employees of OneBeacon Insurance Company, without any required consultation with York Insurance of Maine, then, in turn, denied James Laplante's uninsured motorist claim on the basis that it exceeded policy limits.

Mr. Laplante claims that he paid **three separate premiums** for uninsured coverage within one policy, and is thereby entitled under Rhode Island law (the locus of the accident) and under Pennsylvania law to stack the coverage provided by the three premiums he paid.

- **Post Hoc Creation of Diversity Is Disfavored.**

OneBeacon Insurance Group is attempting to create complete diversity by substituting a Maine Corporation (by way of a motion to amend in the second instance). That is a prohibited amendment. Compare discussion in *PayPhone LLC v. Brooks Fiber Communications of Rhode Island*, 126 F.Supp.2d 175 (D.R.I.,2001.)

Furthermore, if One Beacon Insurance Group, as a Defendant on an uninsured motorist claim is made a resident of Vermont with the Plaintiff by operation of the provisions of 28 USC §1331 (c), then there is no constitutional diversity.

Defendant, OneBeacon Insurance Group, removed this case from the State Court of Rhode Island to the venue of the U.S. District Court of Rhode Island, apparently on the basis that Rhode Island is the " judicial district, which a substantial part of the events or omissions giving rise to claim occurred" pursuant to 28 USC §1391(a)(2) and because a corporate defendant, which it is not, is determined to be a resident in which it is subject to personal jurisdiction at the time the action occurred, pursuant to 28 U.S.C. §1391(c).

Members of OneBeacon Insurance Group sell insurance in all fifty states, including Vermont, the state in which the Plaintiff resides, and Rhode Island, where the

accident occurred, and where the Plaintiff had been temporarily residing when the accident occurred

OneBeacon Insurance Group has offices through out the United States. York Insurance Company of Maine is a member of OneBeacon Insurance Group and its sells automobile insurance in Vermont. Its automobile insurance business has been ceded to OneBeacon Insurance Company, which is a Pennsylvania Corporation, which has offices in Foxboro, Massachusetts.

Staff employed by OneBeacon Insurance Company, writing under the letter head of OneBeacon Insurance Group, located in Foxboro, Massachusetts, have denied the claim of the Plaintiff, James Laplante, of Vermont for an accident and hospitalization in Rhode Island under a policy underwritten by York Insurance Company of Maine, another member of OneBeacon Insurance Group

OneBeacon Insurance Group is a juridical entity, which has been subject to a permanent injunction issued by the US District Court for the District of Rhode Island banning the use of the name "OneBeacon Insurance Group" within the State of Rhode Island.

OneBeacon Insurance Group is an accounting entity recognized in reports filed with the U.S. Securities and Exchange Commission.

OneBeacon Insurance Group is a regulated insurance entity in all fifty states. It has made reports to insurance commissioners regarding the members in its group in the State of Massachusetts, the State of California, the Commonwealth of Pennsylvania, and the State of Maine.

OneBeacon Insurance Group seeks to resolve its lack of diversity problem by substituting itself with one of its members, York Insurance Company of Maine, on the basis that said entity issued the original insurance policy, which was then ceded and receded through the mechanism of OneBeacon Insurance Group with another member, OneBeacon Insurance Company, which ultimately denied Plaintiff's claim.

If a corporation may not pierce its own corporate veil to create diversity, *PayPhone LLC v. Brooks Fiber Communications of Rhode Island* 126 F.Supp.2d 175D.R.I.,2001[38].Compare*1 Fletcher Cyclopedia of Private Corp. § 43. Parent and subsidiary corporations*, supra, then certainly a juridical group can not pick and choose among its group members to create diversity, by replacing the group entity which

---

[38] *PayPhone LLC v. Brooks Fiber Communications of Rhode Island*, 126 F.Supp.2d 175 (D.R.I.,2001).The First Circuit has adopted the rule that a corporation may not pierce its own veil or apply the alter ego doctrine for its own benefit. *See McCarthy v. Azure,* 22 F.3d 351, 362-63 (1st Cir.1994). This rule applies with equal force to a corporation seeking to pierce its own veil in order to create diversity jurisdiction. *See Panalpina Welttransport GmBh v. Geosource, Inc.,* 764 F.2d 352 (5th Cir.1985); *Fritz v. American Home Shield Corp.,* 751 F.2d 1152 (11th Cir.1985). Therefore, BFC-RI as a matter of law should have been prohibited from advancing the argument that its separate corporate existence should be ignored. There are two sound reasons for this rule. First, the alter ego and corporate veil piercing doctrines are equitable in nature. Consequently, the right to apply either doctrine is reserved to aggrieved third parties. *See id.* (citing *Harrell v. DCS Equip. Leasing Corp.,* 951 F.2d 1453, 1458 (5th Cir.1992); *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.,* 884 F.2d 688, 697 (2d Cir.1989); *In re Rehabilitation of Centaur Ins. Co.,* 238 Ill.App.3d 292, 179 Ill.Dec. 459, 606 N.E.2d 291, 296 (1992), *aff'd,*158 Ill.2d 166, 198 Ill.Dec. 404, 632 N.E.2d 1015, 1018 (1994)).
Second, permitting a corporation to add places of citizenship in order to establish or preserve diversity jurisdiction would thwart the intent of Congress to limit federal diversity jurisdiction. The multiple corporate citizenship provided for in 28 U.S.C. § 1332(c) was intended to reduce the federal court diversity caseload. *See Reid v. Boyle,* 2 F.Supp.2d 803, 807 (D.Va.1998). Moreover, a corporation is deemed to be a citizen of the state where it has its principal place of business because that is the state where "its public contacts are most numerous, and thus where litigation will take place most frequently." Charles Alan Wright, Arthur R. Miller and Edward H. Cooper, 13B Federal Practice and Procedure § 3625 at 632 (1984). For these reasons, a corporation should not be permitted***180** to add places of citizenship in order to create diversity jurisdiction where it would not exist otherwise. ***As stated previously, a court may only consider the corporate activities of the corporation at issue in determining that corporation's principal place of business. *See Taber,* 987 F.2d at 62-63. The sole exception to this rule arises where there is evidence that a parent and subsidiary failed to maintain their separate corporate identities Miller v. Dixon Industries Corp., 513 A2d 597 (RI); Parrillo v. Giroux Co., Inc., 426 A2d 1313 (RI) (parent company as not liable for subsidiary's defective product container where no evidence of control or domination).

dominates and controls all of its members, with one of its subordinate members, especially one whose function is nominal, to be the Defendant.

- **Defendant's Motion To Dismiss and Amend Must Be Denied.**

The Plaintiff, James Laplante, initially prosecuted his claim against Defendant as the real party in interest, pursuant to Rule 17(a) of the Rhode Island Rules of Civil Procedure. Federal Rule 17 (a) also only applies to a Plaintiff.[39] A Plaintiff has the sole right to determine whom he sues as a party in interest, not a Defendant. *Simpson v. Providence Washington Ins. Group, 608 F.2d 1171,1173, Fn2,* 1174, (9th Cir. 1979)[40],[41]. It is not incumbent on the Plaintiff to select the members of OneBeacon Insurance Group that the Defendant would itself have chosen.[42]

---

[39] Fed.R.Civ.P. 17(a). Rule 17(a) is not jurisdictional and relates only to the proper parties and the capacity to sue. As the Supreme Court observed in *Navarro Savings Association v. Lee,*446 U.S. 458, 462 n. 9, 100 S.Ct. 1779, 1782-83 n. 9, 64 L.Ed.2d 425 (1980), Rule 17(a) frequently overlaps with the jurisdictional rule that diversity jurisdiction depends on the citizenship of the real parties to the controversy, but "the two rules serve different purposes and need not produce identical outcomes in all cases."

[40] *Simpson v. Providence Washington Ins. Group,* 608 F.2d 1171,1174 (9th Cir. 1979). A plaintiff ordinarily is free to decide who shall be parties to his lawsuit. *See McDonald v. General Mills,Inc.,* 387 F. Supp. 24, 38 (E.D.Cal. 1974); 7 C. Wright & A. Miller, Federal Practice and Procedure, § 1602, p. 17, (1972). *** The potential liability of other parties was a matter plaintiffs' counsel might have assiduously explored through discovery devices. It was not incumbent on Lincoln to propose as additional defendants persons the Roches, as masters of their complaint, permissively might have joined.

[41] *Simpson v. Providence Washington Ins. Group, 608 F.2d 1171,1173, Fn2,* (9th Cir. 1979). "The real party in interest concept is correctly applied only to those persons prosecuting an action, not to a defendant. *See* Fed.R.Civ.P. 17; 6 C. Wright & A. Miller, Federal Practice and Procedure §§ 1543 *et seq.*, p. 643 (1971)."

[42] *Lincoln Property Co. v. Roche*, 04-712 (U.S. 2005). This case concerns 28 U.S.C. § 1441, which authorizes the removal of civil actions from state court to federal court when the action initiated in state court is one that could have been brought, originally, in a federal district court. § 1441(a). When federal-court jurisdiction is predicated on the parties' diversity of citizenship, see § 1332, removal is permissible "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which [the] action [was] brought." § 1441(b). *** Defendants may remove an action on the basis of diversity of citizenship if there is complete diversity between all named plaintiffs and all named defendants, and no defendant is a citizen of the forum State. *** We granted certiorari, 543 U.S. 1186 (2005), to resolve a division among the Circuits on the question whether an entity not named or joined as a defendant can nonetheless be deemed a real party in interest whose presence would destroy diversity. Compare373 F. 3d, at 620-622, with *Plains Growers, Inc.* v. *Ickes-Braun Glasshouses, Inc.*, 474 F. 2d 250, 252 (CA5 1973) ("The citizenship of one who has an interest in the lawsuit but who has not been made a party . . . by plaintiff cannot be used by plaintiff on a motion to remand to defeat diversity jurisdiction."), and *Simpson* v. *Providence Washington Ins. Group*, 608 F. 2d 1171, 1173-1175 (CA9 1979) (Kennedy, J.) (upholding removal where Alaska plaintiff sued Rhode Island parent company without joining as well

As a consequence, complete diversity cannot exist in this action. The matter should be remanded to Kent County Superior Court for further proceedings.

The Defendant, OneBeacon Insurance Group, (Control Group), is an unincorporated control group for at least 22 insurance entities of White Mountains, LTD., a Bermuda limited partnership, which solely owns all stock of all of the affiliates.

White Mountains, Ltd. has its directors serve as directors of all of those 22 insurance affiliates, and solely controls such affiliates. The Control Group (Defendant, OneBeacon Insurance Group) collects premiums for its affiliates. The Control Group decides which claims the affiliates will pay.

The members of the Control Group are those several insurance affiliates that do business in all fifty (50) states of the United States, **including Rhode Island and Vermont**.

The staff of Defendant Control Group has been the sole source of communication to James Laplante regarding the terms of his insurance contract. The staff of the Control Group has refused to pay James Laplante's claim. The staff of the Control Group has denied Mr. Laplante's claim for stacking. Within the same claim now pending before this Court, the Control Group (OneBeacon Insurance Group) **has already fully paid Joseph Laplante** (Plaintiff's father, and passenger in his insured motor vehicle) for his injuries.

The Defendant's counsel has admitted that "OneBeacon Insurance Group" is not a corporation. See Exhibit 1, Communications between OneBeacon Insurance Group and Joseph and James Laplante's regarding their claims.

---

potentially liable Alaska subsidiary, and the parties did not act collusively to create diversity jurisdiction).*** An in-state plaintiff may invoke diversity jurisdiction, but § 1441(b) bars removal on the basis of diversity if any "part[y] in interest properly joined and served as [a] defendan[t] is a citizen of the State in which [the] action is brought."[fn6] (Emphasis Added).

The Plaintiff has intentionally not sued OneBeacon Group, LLC and York Insurance Company of Maine because neither entity received Plaintiff's premiums, and neither has erroneously denied his claim.

OneBeacon Group, LLC did not receive Plaintiff's premiums, or make any decisions regarding Plaintiff's claims. York Insurance Company of Maine's claims are reinsured indirectly by White Mountains, Ltd., and by other affiliates of White Mountain, Ltd. indirectly. York Insurance Company of Maine does not maintain reserves to pay claims. It pays claims through its re-insurance agreements with other members of Defendant Control Group, all of which are protected by reinsurance agreements with White Mountains, Ltd.

Payments on York Insurance Company of Maine's claims for automobile insurance are not determined by its staff. It does not receive premiums, and it does not pay its losses with its own money. It is a mere accounting and legal artifice of a holding company, wherein its activities and finances are completely controlled at a higher level, through a management control group known as "OneBeacon Insurance Group."

White Mountains, Ltd., as an insurance holding company, reports, at its level, the income and losses of all of its insurance affiliates to the U.S. Security and Exchange Commission. White Mountains, Ltd., a Bermuda entity, utilizes Defendant, OneBeacon Insurance Group, as a control group to make all decisions of its insurance affiliates, and to pay the bills and collect the revenues of all of its affiliates. White Mountains, Ltd., because it is a foreign partnership, has no standing to be substituted as a Party Defendant here, and its inclusion would not otherwise create diversity.

Application of the principles set out in *Carden v. Arkoma Assocs.,* 494 U.S. 185, 195-96, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990), would otherwise require this Honorable Court to examine the state residence of each member of OneBeacon Insurance Group to determine citizenship for diversity purposes. That, of course is the Defendant's burden, not Plaintiff's.

The Defendant here attempts to avoid this step by denying its juridical existence, and by then asking this Court, after removal, to replace itself with York Insurance Company of Maine, in order to create diversity. However that exercise is moot since the provisions of 28 U.S.C. 1332 (c ) would also make York Insurance a citizen of Vermont (present residence of Plaintiff when this matter was removed) and thus again deny complete diversity between the Plaintiff and the Defendant [43].

**SUMMARY:**

Diversity does not provide jurisdiction for this Court to consider this matter.

Federal question jurisdiction would otherwise have provided jurisdiction in this matter, unless the Court agrees with Defendant that it does not exist.

If jurisdiction exists, the Court should deny the motion to dismiss the only Defendant now before the Court: One Beacon Insurance Group.

---

[43] *Handelsman v. Bedford Village Associates Ltd. Partnership*,213 F.3d 48, 51 C.A.2 (N.Y.,2000.), When this action was removed to federal court, the purported basis for subject matter jurisdiction was 28 U.S.C. § 1332, which provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between ... citizens of different States." 28 U.S.C. § 1332(a)(1). Diversity jurisdiction requires that "all of the adverse parties in a suit ... be completely diverse with regard to citizenship."*E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 930 (2d Cir.1998) (citing *Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806)); *see also Wisconsin Dep't of Corrections v. Schacht,* 524 U.S. 381, 388, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998) ("A case falls within the federal district court's original diversity jurisdiction only if diversity of citizenship among the parties is complete, *i.e.*, only <u>if there is no plaintiff and no defendant who are citizens of the same State."</u>) (internal quotation marks omitted).

If this Court agrees that original jurisdiction exists, then it should remand the state law issues to state court.

If this Court retains jurisdiction of this matter, it should grant Plaintiff's separately filed Motion to add as Parties: York Insurance Company of Maine, and OneBeacon Insurance Company.

James Laplante
Plaintiff
By His Attorneys

Keven A. McKenna, #662
Keven A. McKenna, P.C.
23 Acorn Street
Providence, R.I. 02903
401 273-8200 Tel.
401 521-5820
KevenM@McKennalaw.cc Net

## CERTIFICATION

I, the undersigned, hereby certify that on the 3rd day of April ,2006, I mailed a copy of the within Motion and Memorandum, postage prepaid, to Attorney of OneBeacon Insurance, C. Russell Bengsten, Carroll, Kelly & Murphy, Counselors at Law, One Turks Head Place, Suite 400, Providence, R.I. 02903.