UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| JAMES P. LAPLANTE | : | |
| | : | |
| vs. | : | C.A. No. 05-496 ML |
| | : | |
| OneBEACON INSURANCE GROUP | : | |

DEFENDANT'S OBJECTION TO
PLAINTIFF'S MOTION TO ADD PARTIES AND NEW CLAIMS

Defendant, OneBeacon Insurance Group hereby objects to the plaintiff's Motion to Add Parties And To Add New Claims (which appears to be a Motion to Amend under Rule 15) and asserts as grounds therefore that to allow the motion would be a futile act because the plaintiff cannot demonstrate that he has a legally cognizable claim against any of the proposed new parties, other than York Insurance Company of Maine. In support of this Objection, the Court is respectfully referred to the Memorandum of Law filed contemporaneously herewith.

WHEREFORE, the defendant respectfully requests that the plaintiff's Motion be denied.

OneBEACON INSURANCE GROUP
By its Attorneys,
CARROLL KELLY & MURPHY

C. RUSSELL BENGTSON #1233
PATRICIA A. BUCKLEY #2987
One Turks Head Plaza, Suite 400
Providence, Rhode Island 02903
(401) 331-7272
(401) 331-4404

CERTIFICATION

I hereby certify that I mailed a true copy of the within to Kevin McKenna, Esq., 23 Acorn Street, Providence, RI, 02903 on this 17th day of April, 2006.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| JAMES P. LAPLANTE | : | |
| | : | |
| vs. | : | C.A. No. 05-496 ML |
| | : | |
| OneBEACON INSURANCE GROUP | : | |

DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS OBJECTION TO PLAINTIFF'S MOTION TO ADD PARTIES AND NEW CLAIMS

## I. FACTS AND POSTURE

As the Court is aware, this matter has been pending before the Court upon the plaintiff's Motion to Remand and the defendant's Motion for Summary Judgment. The plaintiff was initially given thirty days by the Court to conduct discovery relative to the motions and this was then extended an additional thirty days. During this time period, the plaintiff conducted three depositions (of the corporate secretary of OneBeacon Insurance Group, LLC and two claims adjusters assigned to the plaintiff's file) and propounded 45 Requests for Admission upon the defendant which were accompanied by voluminous documents. Despite this extensive discovery, the plaintiff was unable to unearth a single piece of evidence that supports his idea that OneBeacon Insurance Group is anything other than the trade name that OneBeacon Insurance Group, LLC has stated it is, or that any entity other than York Insurance Company of Maine is the party with which the plaintiff contracted for the insurance coverage at issue here. Indeed, after arguing repeatedly that OneBeacon Insurance Group is a proper defendant because it is the

entity with which the plaintiff contracted, the plaintiff has finally been forced to admit that this entity is York Insurance Company of Maine and that York is the entity that allegedly breached the contract with the plaintiff, here.[1]

Undaunted, the plaintiff has not only persisted in his efforts to oppose the substitution of York Insurance Company of Maine for OneBeacon Insurance Group, but has now filed this motion to Amend his Complaint to add as parties OneBeacon Insurance Group, LLC, OneBeacon Insurance Company, OneBeacon America Insurance Company (hereafter collectively referred to as "the OneBeacon companies") and York Insurance Company of Maine. The claim asserted against these additional entities is that they are "interlocked alter egos and instrumentalities of each other" and have acted "individually, jointly and severally" in bad faith in breaching their "contract obligations" with the plaintiff. Proposed Count V, paragraph 101, attached to the plaintiff's Motion to Add Parties. While the defendant has no objection to the substitution of York for OneBeacon in this action since York is clearly the proper party defendant, it opposes the plaintiff's attempt to add the three additional OneBeacon defendants to this matter on the grounds that the plaintiff is utterly unable to make a prima facie showing that he has a meritorious claim against these defendants and, therefore, to allow any such amendment of the Complaint would be a futile gesture.

## II. ARGUMENT

While it is certainly true that under the liberal standards of Fed. R. Civ. P.

---

[1] "York Insurance Company of Maine is not a separate and independent corporation (albeit it is the initial underwriter of the Plaintiff's contract of insurance). It is the same entity within the OneBeacon Insurance Group, which denied Mr. LaPlante's claim and breached his contract." Plaintiff's Memorandum at page 18, emphasis added.

15(a), leave to amend should be freely given under most circumstances, the fact that an amendment, if permitted, "would be an exercise in futility is accepted, however, as a ground for denial of such a motion." Montaup Electric Co. v. Ohio Brass Corp. v. Stone & Webster Engineering Corporation, 561 F.Supp. 740, 750 (D.C.R.I., 1983), *see also*, Council for Employment and Economic Energy Use v. WHDH Corp., 580 F.2d 9 (1st Cir., 1978). Where a complaint, as amended, would be subject to dismissal, leave to amend need not be granted. DeLoach v. Woodley, 405 F. 2d 496, 497 (5th Cir., 1968), Hodnik v. Baltimore & Ohio Railroad, 54 F.R.D. 184, 186 (D.C.W.D. Penn., 1972). Stated another way, "when the pleading and affidavits filed in support of leave to file it are totally lacking in merit, then leave to amend should be denied. The least that should be expected of the moving party is that he present a prima-facie meritorious claim." Kaplan v. US, 42 F.R.D. 5 (D.C.C.D. Calf., 1967).

The claims asserted by the plaintiff in his proposed Count V are grounded in piercing the corporate veils of York and the three OneBeacon companies. This is the only basis upon which any of the OneBeacon companies could conceivably be held directly liable to the plaintiff. In the case of Payphone, LLC v. Brooks Fiber Communications of RI, 126 F.Supp.2d 175, 181 (D.C.R.I., 2001), Judge Lagueux noted that "[t]he First Circuit has repeatedly stated that the separate corporate identities of a parent and subsidiary are entitled to recognition as long as the two corporations observe corporate formalities." The factors used to make this determination are whether the corporations are 1). separately incorporated, 2). have separate boards of directors, 3). keep separate accounting and tax records,

and 4). have separate facilities and operating personnel. Id. Further, a parent and subsidiary can maintain their separate corporate identities without satisfying every one of the factors. Id., at 182. In rejecting the decision of the Magistrate Judge which had permitted piercing of the corporate veil between a parent and subsidiary corporation, Judge Lagueux observed at page 182:

> [I]n the context of a parent-subsidiary relationship, a certain degree of control over the subsidiary is merely an incident to the full ownership of the subsidiary. The First Circuit has made clear that this fact "is insufficient, without more, to justify ignoring the separate corporate entities. *Topp* [*v. CompAir Inc.*,], 814 F.2d [830] at 837 [(1st Cir., 1987)]. In addition, this fact is entitled to even less weight when a party urges that several separate corporate identities be ignored. *See id.* Emphasis and bracketed material added.

For example, in U.S.I Properties Corp. v. v. M.D. Const. Co., Inc., 860 F.2d 1, 7 (1st Cir., 1988), the First Circuit held that separate corporate identities were maintained even though the corporation at issue was a wholly-owned subsidiary of the grandparent corporation, the grandparent corporation set the subsidiary's policy and prepared its budget, the subsidiary was grossly undercapitalized, and both corporations had the same officers and directors. And in de Walker v. Pueblo Int'l Inc., 569 F. 2d 1169, 1171 and 1173 (1st Cir., 1978), the First Circuit found that because the two corporations involved kept separate books for accounting and tax purposes, the separate corporate identities were entitled to recognition despite that fact that the parent corporation routinely included the subsidiary's figures in its calculations of overall profits, losses, expenses, numbers of employees and real estate, among other items. In addition, the parent corporation's board of directors closely scrutinized the subsidiary's operations, even choosing the subsidiary's

president.

The case law is clear: significantly more than simply a parent/subsidiary relationship and involvement in each other's business interests must exist to justify piercing the corporate veil. This is particularly true where, as here, the plaintiff is asking the Court to ignore the corporate forms of no less than four separate corporations without making even the most rudimentary effort to set out for the Court any competent evidence to justify pursuing these specious claims against any one of the OneBeacon companies.

Instead, the plaintiff has tried very hard to create the maximum possible confusion for the Court about the inter-relationship of the various OneBeacon companies in an effort to paint the corporate structure as somehow generally suspect and incestuous. Despite taking Dennis Smith's deposition, the plaintiff has not unearthed any evidence to counter the assertions in Mr. Smith's affidavits that York is a wholly owned subsidiary of OneBeacon America Insurance Co., a Massachusetts corporation, which is a wholly owned subsidiary of OneBeacon Insurance Company, a Pennsylvania corporation, which is, in turn, a wholly owned subsidiary of OneBeacon Insurance Group, LLC. The plaintiff cannot point to one actual, competent piece of evidence to challenge this structure or to establish that any corporation in this chain is anything other than a bona fide, independent corporation that observes all corporate formalities and is entitled to the protections deriving from that form of operation.

In lieu of such evidence, the plaintiff has treated the Court and counsel to a series of conclusory statements and wild, unsupported half-truths or outright flights

of fantasy which appear to be based upon the plaintiff's misunderstanding of isolated facts or testimony. For instance, the plaintiff asserts at page 18 of his Memorandum that the "insurance contract" between the plaintiff and York "had been ceded to another member of the Group, OneBeacon Insurance Company . . ." and that York has "ceded its automobile business, to OneBeacon Insurance Company". Neither of these statements is true. Mr. Smith testified at his deposition (a full copy of the deposition is attached hereto as Exhibit A) that York, like many insurance companies, enters into contracts for claims handling and reinsurance to protect it against losses. Smith transcript at pp. 17, 29-35. In York's case, it purchases this 100% reinsurance from OneBeacon Insurance Company. It pays for this reinsurance by "ceding" its collected premiums (its "insurance business", Smith transcript at p. 29) to OneBeacon Insurance Company. In exchange for the premium payments, OneBeacon Insurance Company reimburses York for 100% of its losses. Completing this circle, because OneBeacon Insurance Company reimburses York for 100% of its losses, the contract between the two companies gives OneBeacon Insurance Company the right and obligation to adjust York's claims on behalf of York. This contractual arrangement does not, in any sense, involve the ceding by York of either the "plaintiff's contract" or York's "automobile business." It also does not alter York's responsibility to the plaintiff for alleged breaches of the insurance contract or for alleged bad faith in the claims handling process. The evidence is uncontradicted that York is a fully functioning Maine corporation (with its principal place of business in Maine) that writes insurance policies, underwrites risks and earns premiums for the policies it writes. See Smith

Affidavit at ¶7. What York does with those premiums and who it hires to reinsure it and adjust its claims has no bearing on the plaintiff's cause of action or the proper defendant to this action. It also does not create such a degree of involvement between York and any of the OneBeacon companies that they can be considered one functioning entity. The plaintiff's contract was with York – a fact finally admitted by the plaintiff – and the plaintiff's breach of contract and bad faith actions properly lie only against York.

Further by way of example, the plaintiff offers us this remarkable paragraph unaccompanied by a single citation to supporting authority for the very good reason that none exists:

> Payments on York Insurance Company of Maine's claims for automobile insurance are not determined by its staff. It does not receive premiums, and it does not pay its losses with its own money. It is a mere accounting and legal artifice of a holding company, wherein its activities and finances are completely controlled at a higher level, through a management control group known as "OneBeacon Insurance Group". Plaintiff's Memorandum at page 34.

Since York, as noted by Mr. Smith in his affidavit, is a fully functioning, duly incorporated business entity, located in the state of Maine, that writes insurance policies, underwrites risks and earns premiums for the policies it writes, it remains a mystery as to where the plaintiff got the idea that premiums are not determined by York's "staff" or that it is a mere "accounting and legal artifice" whose "finances are completely controlled at a higher level" through the <u>trade name</u> of OneBeacon Insurance Group. Certainly, the plaintiff never even asked any of the deponants if someone other than York sets its premiums. And, there is no evidence of any kind

in this record that York's activities and finances are "completely controlled at a higher level" through One Beacon Insurance Group or anyone else. These statements have been recklessly made, at best, and must be treated as the unsupported, unsubstantiated, fictional musings that they are.

In fact, throughout the entire 36 pages of the plaintiff's Memorandum, he never once indicates that the discovery he conducted has unearthed <u>any</u> actual information that is contrary to that stated by Mr. Smith in his affidavits. Not a single fact stated by Mr. Smith is challenged – other than by general, unsupported and conclusory statements like those quoted from the plaintiff's Memorandum, above.

Further, the plaintiff has provided no colorable rationale for also naming the other corporations in York's corporate chain: OneBeacon America Insurance Company and OneBeacon Insurance Group, LLC. He states only that York is "controlled and owned" by OneBeacon America Insurance Company, which is, in turn, owned and controlled by Defendant OneBeacon Insurance Company, which is, in turn, owned and controlled by Defendant OneBeacon Insurance Group, LLC." Proposed Count V, ¶80. Since the three depositions and 45 Admissions propounded specifically on the issue of corporate structure have not resulted in any evidence that any of these corporations exert "control" over any of the others, the plaintiff has simply jumped from the mere fact of ownership to "control" and "alter ego" status. In fact, despite having had two full months to explore, specifically, the issue of corporate structure and control, the plaintiff did remarkably little discovery concerning that issue as between any of the corporations in York's parentage. The plaintiff, therefore, has no factual basis for asserting that any of the OneBeacon

companies control any of the others or that they are alter egos of each other. He has simply made bald, unsupported and unsupportable assertions as a way of attempting to bolster his fatally flawed claim against his one, improperly named defendant, OneBeacon Insurance Group.

We do know for a fact – because it is uncontested, that York and the three OneBeacon companies are all separately incorporated. Smith Affidavit at 6. We also know York's operating facilities are located in Maine while OneBeacon Insurance Group, LLC and the other OneBeacon companies are located in Massachusetts. Id. at ¶2, 6 and 7. We also know that York separately accounts for its premiums and that it enters into contracts with other companies, including OneBeacon Insurance Company for reinsurance and claims handling. Finally, we know from Mr. Smith's affidavit and his deposition testimony that York and certain of the OneBeacon companies share some directors and officers. None of these facts demonstrate the degree of involvement required for piercing the corporate veil of four separate corporations. The plaintiff cannot show one instance where the corporate forms or identities were ignored Try as he might, the plaintiff can show nothing more, here, than that these corporations interact exactly as they should: parent to subsidiary all down the line beginning at OneBeacon Insurance Group, LLC and ending at York. Absent some showing that amounts to more than wishful thinking or fiction, there is no basis for piercing the corporate veils of these corporations.

In the absence of evidence to support his "intentional" decision[2] to sue a non-entity, OneBeacon Insurance Group and to not sue York, he has, apparently decided that his best approach, now, is to throw as much as possible up against the wall of this court's jurisdiction and hope something sticks. None of it does. No matter how charitably one views the plaintiff's allegations – merely having the audacity to say it, does not make it so. The plaintiff's Motion to Add Parties is futile, he cannot make a prima facie showing of a legitimate claim against any of the parties except York and the Motion must be denied.

A few other points related to the plaintiff's Memorandum and the issues before the Court should be briefly made. The plaintiff cites to the case of Carden v. Arkoma Assoc., 494 S.Ct. 185, 110 S. Ct. 1015 (1990) as authority for asking this Court to conclude that defendant OneBeacon Insurance Group is an "artificial entity" as opposed to the limited liability corporation that it actually is. Carden, however, specifically deals with "artificial entities created by state law" such as limited liability corporations and joint stock companies. Id., at 187-198, 1017-1018. It does not, in any sense, recognize a category of "artificial entities" for trade names or for other defendants that a plaintiff attempts to create out of whole cloth simply by deleting the "LLC" designation from a properly organized corporate entity's name.

It is, however, absolutely true that the First Circuit ruled in January that when dealing with a limited liability corporation, for purposes of determining diversity jurisdiction the court must look to the members of the LLC. Pramco, LLC v. San

[2] "The Plaintiff has intentionally not sued OneBeacon Group, LLC and York Insurance Company of Maine because neither entity received Plaintiff's premiums and neither has erroneously denied his claim." Plaintiff's Memorandum at page 34. Clearly this statement is directly contradictory to the plaintiff's Motion to add OneBeacon Insurance Group, LLC and York (and OneBeacon Insurance Company and OneBeacon America Insurance Company) as additional parties.

Juan Bay Marina, Inc., 435 F.3d 51 (1st Cir., 2006). As Mr. Smith's supplemental affidavit makes clear, there is only one member of OneBeacon Insurance Group, LLC: Fund American Companies, Inc., a Delaware corporation with its principal place of business in Boston, Massachusetts. There is no question that there is complete diversity between the plaintiff and OneBeacon Insurance Group, LLC, OneBeacon Insurance Company and OneBeacon America Insurance Company – as well as between the plaintiff and York. The plaintiff's arguments about the location of OneBeacon Insurance Group's affiliated companies, where they are licensed to do business or the states in which the various companies actually do business entirely misses the point, here: the inquiry under §1332 (c)(1) is in which state a corporation is organized and in which state it has its principal place of business – NOT where it simply does ANY business. None of the OneBeacon companies or York were incorporated in either Rhode Island or Vermont and none have their principal places of business in those states. This is the end of the diversity inquiry.

The plaintiff also argues that OneBeacon Insurance Group has a "juridical existence" and is a "juridical entity" as recognized by the "companion" trade mark infringement case of Beacon Mutual Ins. Co. v. OneBeacon Insurance Corp., 376 F.Supp.2d 251 (D.C.R.I., 2005). Plaintiff's Memorandum at pp. 5 and 7. From this, the plaintiff seeks to bolster his claim that OneBeacon Insurance Group is more than a trade name and is an entity that he can sue. However, that case – which was entirely unrelated to this case and is not a "companion" case in any sense of the word – did not deal with issues relating to corporate existence – it was simply a trade mark infringement case that clearly recognized the existence of the name OneBeacon

Insurance Group as a trade name. This is, in fact, the position the defendant has taken all along, here: OneBeacon Insurance Group is a trade name – nothing more, nothing less. As stated by Mr. Smith in his affidavit, it is a shorthand way of referring to all of the companies owned by OneBeacon Insurance Group, LLC. After three depositions, 45 Requests for Admission and 2 appearances before Magistrate Judge Martin, the plaintiff has not unearthed one piece of evidence to suggest that OneBeacon Insurance Group exists as a legal entity anywhere but in the plaintiff's fertile imagination. This Court has clear diversity jurisdiction and OneBeacon Insurance Group must be dismissed from this action.

## III. CONCLUSION

For all of these reasons, and those articulated by the defendant in its prior Memorandum and Affidavits filed in this matter, the defendant respectfully requests that the plaintiff's Motion to Add Parties and Motion for Remand be denied and that the defendant's Motion for Summary Judgment be granted.

OneBEACON INSURANCE GROUP
By its Attorneys,
CARROLL KELLY & MURPHY

C. RUSSELL BENGTSON #1233
PATRICIA A. BUCKLEY #2987
One Turks Head Plaza, Suite 400
Providence, Rhode Island 02903
(401) 331-7272
(401) 331-4404

## CERTIFICATION

I hereby certify that I mailed a true copy of the within to Kevin McKenna, Esq., 23 Acorn Street, Providence, RI, 02903 on this 17th day of April, 2006.