Exhibit A

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

JAMES P. LAPLANTE :
:
VS. : C.A. NO. 05-496-ML
:
ONEBEACON INSURANCE GROUP :

Deposition of DENNIS SMITH, a Witness herein, taken on behalf of the Plaintiff, on TUESDAY, FEBRUARY 21, 2006, 11:00 A.M., at the offices of OneBeacon Insurance Group, One Beacon Street, Boston, Massachusetts, before Vivian S. Dafoulas, Registered Merit Reporter/Certified Realtime Reporter.

Vivian S. Dafoulas, RMR-CRR
50 Fieldstone Drive
East Greenwich, RI 02818-2064
(401) 885-0992



44d59ef1-f3b2-45f9-b7a5-4c217ed5fd9d

# I N D E X


| WITNESS | PAGE |
|---|---|
| DENNIS SMITH | |
| EXAMINATION BY MR. McKENNA | 4 |

| EXHIBITS | | PAGE |
|---|---|---|
| 1 | News release - CGU Changes Name | 7 |
| 2 | OneBeacon submission to Massachusetts and and California State Requirements | 10 |
| 3 | Organizational chart of White Mountains | 18 |
| 4 | York Report of Examination as of 12/31/04 | 18 |
| 5 | Potomac Report of Examination | 19 |
| 6 | News Release 1/16/06 re Thomas Forsyth | 55 |
| 7 | White Mountains 2004 Management Report | 62 |
| 8 | OneBeacon 2005 annual report of foreign LLC | 62 |
| 9 | OneBeacon application for registration as a foreign LLC | 62 |
| 10 | Listing of OneBeacon jobs | 62 |




44d59ef1-f3b2-45f9-b7a5-4c217ed5fd9d

A. Since 1977.
Q. In 1977 am I correct that this building was owned and essentially operated by CGU Insurance Company?
A. No, that's not correct.
Q. What is the name?
A. The name of what?
Q. What was -- in '76, '77 when you came --
A. Who owned the building?
Q. Yes.
A. Commercial Union Insurance Company, American Employers Insurance Company, the Employers Fire Insurance Company and the Northern Assurance Company of America. Joint tenants.
Q. Joint tenants?
A. Or tenants in common. I forget which.
Q. You were employed by those entities at that time?
A. At that time I was employed by Commercial Union Insurance Company.
Q. Did there come a time somewhere in 2001 when Commercial Union was purchased by another entity?
A. Be more specific.
Q. The name Commercial Union, what is the

White Mountains Insurance Group Limited and our group name, the group name was changed on or about that date to the OneBeacon Insurance Group or OneBeacon or OneBeacon Insurance. They are all used interchangeably.

MR. McKENNA: I'm going to show you an article from the Insurance Journal dated June 11th, 2001 -- we'll mark it in a moment -- and on the last sentence, where I have underlined the sentence, it says, "OneBeacon Insurance Group functions through insurance companies licensed to do business in all 50 states, selling exclusively via network of independent agents."

I'm going to ask you to take a moment to read this press release and then I'm going to ask you whether -- if it's accurate. I'm going to hand this to the stenographer to mark it as Exhibit 1.

(Whereupon, Plaintiff's Exhibit No. 1 was marked.)

THE WITNESS: Do you want me to read the whole thing?

MR. McKENNA: Yes. If you would take a few minutes to read it, I would appreciate it.

MS. BUCKLEY: You don't have a copy I take it of your exhibits.



44d59ef1-f3b2-45f9-b7a5-4c217ed5fd9d

document that I asked you particular questions on?

(Witness hands document to Attorney McKenna.)

BY MR. McKENNA:

Q. Do you agree with this statement: "CGU's parent company, London-based CGNU Group, agreed to sell the CGU U.S. property and casualty operations to Bermuda-based White Mountains Insurance Group in September of 2000"?

A. I would say that's not correct.

Q. And what is incorrect about it?

A. Using the general group terms for who bought who and what was bought.

Q. And what did happen in your terminology?

MR. BENGTSON: I object. Go ahead.

A. All of the stock of what was then CGU Corporation was sold by subsidiaries of CGNU PLC to TACK Acquisition Corp., an indirect subsidiary of White Mountains Insurance Group Limited.

Q. Is this a correct statement: "OneBeacon Insurance Group functions through insurance companies licensed to do business in all 50 states, selling exclusively via network of independent agents"?

A. One or more of the individual member



44d59ef1-f3b2-45f9-b7a5-4c217ed5fd9d

purports to be a report to the Insurance Commissioner of the State of Massachusetts which is available on OneBeacon Insurance Group's Web site?

MR. BENGTSON: I object.

A. Well, I don't know if it is or isn't.

Q. Are you familiar with those companies listed on that document?

A. Some of them have incorrect names. Some are no longer part of the group. Some names have changed. I don't know when this is from. There's an entity here that was dissolved several years ago. Many were sold but I would say aside from name changes and at -- at least one incorrect name that I spotted -- there may be others -- all of these companies at one time were within our group. Not necessarily the same time but --

Q. Is York Insurance Company of Maine a member of OneBeacon Insurance Group?

A. Yes.

Q. You have used the term insurance group with reference to prior owners and to present owners. Could you tell me what the term insurance group means in the insurance business --

MR. BENGTSON: I object. Go ahead.

Q. -- as you use it?

filed with state insurance departments?

Q. Yes.

A. Yes, I do.

Q. Okay. And am I correct that you serve as assistant secretary or secretary of several of the members of the insurance group?

A. Correct.

Q. And am I correct that you are the secretary of York Insurance Company of Maine?

A. Correct.

Q. And do you know the names of each subsidiary of which you have a secretarial capacity?

A. Could I rattle them off now, is that your question?

Q. Sure.

A. Probably. I'm sure I'd miss one or two.

Q. Could you tell me which ones you presently recall?

A. Of which I am secretary?

Q. Or assistant secretary or have some responsibility.

A. Well, I'm secretary of all of the insurance company members. I'm assistant secretary of some of the other entities --

Q. Okay.

counsel viewed Mr. LaPlante as just a member of the public, like a television station that might want to just come in and film these proceedings.

Mr. LaPlante is a person who is important to me and my client in preparing this case because of the wealth of knowledge he has and the wealth of contacts he's made in this case on behalf of his son, and I just want the record to note that I object to conducting this deposition without his assistance.

I realize that Mr. Smith may not have anything to do with that decision by his counsel but I would just like to note it on the record for further consideration at an appropriate time in these legal proceedings.

BY MR. McKENNA:

Q. When an insurance group operates as a group, they report to the Securities and Exchange Commission in a 10-K report as one entity, is that correct?

MR. BENGTSON: I object. Go ahead.

A. No, that's not correct.

Q. Would you -- are you familiar with the 10-K report?

A. I've seen it.

MR. BENGTSON: I object. Go ahead.
A. Be more specific. I'm not --
Q. Can you tell me what a reinsurance agreement is?
A. In general? Just shorthand?
Q. Yes.
A. It's one company cedes a certain amount of its business in some form or other to -- to an assuming company, also an insurance company or reinsurance company.
Q. Am I correct -- I think from reading your affidavit -- that the York Insurance Company of Maine's liabilities for claims are completely reinsured by entities that are within the holding company structure of White Mountains Insurance Group LTD?
MR. BENGTSON: I object.
A. York reinsures 100 percent of its business with OneBeacon Insurance Company, if that's what you're asking.
Q. And OneBeacon Insurance Company is the company by whom you are employed?
A. Correct.
MR. McKENNA: And just so I understand the corporate structure, I'm going to ask you a question



44d59ef1-f3b2-45f9-b7a5-4c217ed5fd9d

THE WITNESS: Right. For starters. Now, where did this --

Q. That came from the Pennsylvania Insurance Commissioner report which is available.

A. An examination report?

Q. Yes. Here it is.

A. Just so I know the context.

MR. McKENNA: One second. I think I have a full copy here.

THE WITNESS: I just wanted to know the general context.

MR. McKENNA: I have two copies. I have the full copy here and I'll mark this as Exhibit 5.

(Whereupon, Plaintiff's Exhibit No. 5 was marked.)

THE WITNESS: Okay.

MR. BENGTSON: You can see it on there. It says Potomac.

THE WITNESS: Okay.

BY MR. McKENNA:

Q. Am I correct that you as the secretary or assistant secretary of these various insurance companies that are members of OneBeacon Insurance Group, that you are familiar with their legal structure?



44d59ef1-f3b2-45f9-b7a5-4c217ed5fd9d

A. Uh-hum.
Q. -- is the York Insurance Company of Maine information that's -- that's included in the block on the bottom accurate?
A. The name is correct and it is a Maine corporation.
Q. Okay. And the next level is what?
A. OneBeacon America Insurance Company. That's the correct name and that is a Mass. corporation.
Q. What is the next level?
A. OneBeacon Insurance Company, a Pennsylvania corporation, that's correct.
Q. What's the next company?
A. OneBeacon Insurance Group LLC and that is -- that's the correct name, that is a Delaware limited liability company.
Q. Are the legal relationships that are attempted to be displayed on that chart by the Insurance Commissioner of Massachusetts correct, to your knowledge?
MR. BENGTSON: I object to the form.
A. I'm not sure what -- what his -- his intent was.
MR. BENGTSON: It's Maine.



44d59ef1-f3b2-45f9-b7a5-4c217ed5fd9d

accepting that there's an indirect ownership there, it is correct. The LTD is -- I believe is -- is initial caps only, capital "L" and I believe there is a period after the "D", but other than that, it's essentially correct, and it is a Bermuda corporation.

Q. Do each of these entities sell insurance?

A. No.

Q. Tell us the ones that do.

A. York Insurance Company of Maine, OneBeacon America Insurance Company and OneBeacon Insurance Company.

Q. Am I correct that OneBeacon Insurance Group LLC does not sell insurance?

A. That is correct.

Q. Now, I noticed -- let's get back. OneBeacon Insurance Group is a copyrighted name according to your Web site as of 2006; is that a correct statement?

A. I don't know. I don't work on trademarks --

Q. Okay.

A. -- or copyrights.

Q. Okay. What person would be in the OneBeacon Insurance Group or any of its corporations

that -- the York Insurance Company of Maine?

A. Do I have a power of attorney to sign reports? I don't know what you mean.

Q. Do you know what a power of attorney is?

A. Generally, yeah.

Q. Tell me what you think it is.

MR. BENGTSON: I'm going to object. Go ahead.

A. It's a piece of paper that says I grant -- I, so-and-so, grant so-and-so power of attorney to do various things.

Q. Do you know John Byrne?

A. Yes, I've met him.

Q. Do you have any powers of attorney from him?

A. No.

Q. Am I correct you prepared and signed the annual report for York Insurance Company of Maine?

A. What do you mean by annual report?

Q. Is there -- are you familiar with a state law in Maine that requires any corporation to file an annual report with the Secretary of State of Maine?

A. You're not talking about the insurance company annual statement? You're talking simply an

THE WITNESS: Currently?
MR. McKENNA: Yes.
A. I may not get them all right. I'd have to double-check my own lists but I'm just -- I'm not using full names I just -- Alex Archimedes, Drew Carnase, Tom Forsyth, Paul McDonough, Mike Miller, Pat Lavoie, Mike McSally. I'll offend some people by forgetting them. Tom Schmitt. I'm sure I'm leaving a couple out. Those -- those names come to mind. Roger Singer.
Q. Am I correct that those gentlemen, some of those gentlemen, perhaps all, are also directors of other insurance companies within the OneBeacon Insurance Group?
A. Some are.
Q. Mr. Michael Miller, does he also hold other directorships?
A. Yes.
Q. And is he -- is he also the president of OneBeacon Insurance Group LLC?
A. Yes.
Q. And is he the president of any other entity?
A. Yes.
Q. Which entities?



44d59ef1-f3b2-45f9-b7a5-4c217ed5fd9d

Q. Yes.
A. Is that your question?
Q. Yes.
A. Yes.
Q. And could you briefly describe it?
A. It's 100 percent reinsurance agreement by which York Insurance Company of Maine cedes 100 percent of its insurance business to OneBeacon Insurance Company, which in turn assumes all of that business in exchange for receipt of premiums and it handles the claims on policies written by York Insurance Company of Maine.
Q. If a check is written out to OneBeacon Insurance Group, into what account is it deposited?
MR. BENGTSON: I object.
A. I have no idea.
Q. Do you agree that income, premium income, for OneBeacon Insurance Group is reported to the Securities and Exchange Commission at the group level?
MR. BENGTSON: I object.
A. I have no idea.
Q. Is there an agreement between -- on reinsurance and claims management between OneBeacon Insurance Company by whom you are employed and any

going to be doing mights here today.

MR. McKENNA: We'll amend that question and say would --

MR. BENGTSON: I think you better start all over again.

THE WITNESS: I didn't understand the question to begin with regardless of the verbs.

Q. The company by which you are employed, OneBeacon Insurance Company --

A. Uh-hum.

Q. -- has agreements with -- do they have agreements of reinsurance with other companies within the holding company structure?

A. Correct. Yes.

Q. All right. Do any of those agreements cover claims that would originate with a policy that was initially underwritten by York Insurance Company of Maine?

A. You're only talking about reinsurance within the group --

Q. Yes.

A. -- or other agreements?

Q. Yes.

A. Just offhand, I think the only other agreement that would apply here, the way you've

A. Uh-hum.
Q. -- is a term of art in the insurance business with which you are familiar, is that correct?
A. Generally, yes.
Q. Could you just basically, in your own words, as you understand it, tell us what the term cede means and what the term re-cede means?
A. Retrocede you mean?
Q. Retrocede, yes.
A. Cede is when an insurance company transfers some amount of some portion of its business to another, to a reinsuring company, which assumes that particular amount of business.
Retrocede is when that -- the -- the reinsurer, the company to whom business was ceded, further cedes it to another company, reinsuring company, either, you know, a portion back to the original ceding company or to another company within the group or to an outside reinsurer, an unaffiliated insurer.
I'm not a reinsurance expert by any means but that's my general understanding.
Q. The company within which the insurance business is ceded, do they assume responsibility for

determine the claims of York on automobile insurance issues?

A. When you say determine them, you mean handle them, settle them?

Q. Yes.

A. Yes.

Q. And the -- if OneBeacon Insurance Company settled a claim for whatever amount of dollars, "X" amount of dollars --

A. Uh-hum.

Q. -- and they sent the insured a check to pay the claim --

A. Uh-hum.

Q. -- after it's settled --

A. Uh-hum.

Q. -- from which banking account, from what entity would that come?

A. I don't know.

Q. Who would know the answer to that question?

A. Whoever handles their bank accounts.

Q. And who would that be?

A. We have a whole floor of corporate accounting department. Someone down there.

Q. Your corporate accounting department, am I

actually that are members of a group.
Q. Okay.
A. If that's what you mean, yes.
Q. So the present group that you are working for --
A. Well, I work for OneBeacon Insurance Company.
Q. But that OneBeacon Insurance Company is a member of a group of companies --
A. Yes.
Q. -- which use the name I guess, according to our affidavit, OneBeacon Insurance Group?
A. Correct.
Q. And the entity that is known as OneBeacon Insurance Group LLC --
A. Uh-hum.
Q. -- is a specific corporation with specific --
A. Not a corporation.
Q. I'm sorry. Limited liability company. Whose legal existence is separate and distinct from this group that we referred to, correct?
A. Group is just a trade name covering all the members.
Q. Well, isn't it more than a trade name --



44d59ef1-f3b2-45f9-b7a5-4c217ed5fd9d

single company but that's not -- you can't do that in 50 states.

Q. But to the extent possible, in the legal area with which you are familiar, these groups try to exchange services?

A. Correct.

Q. Where you've done --

A. In a general sense.

Q. -- you've done legal work for more companies than your own, correct?

MR. BENGTSON: I object.

A. Well, they're all my own in the sense that they're all -- I only have one employer as a technical matter --

Q. Yes.

A. -- but I'm secretary of all of the companies. I mean they're all within the same common ownership.

Q. You don't receive any more money or any less money for the number of entities for which you provide legal services?

A. I wish I did. No, I don't.

Q. Are you familiar with any of the adjusters?

A. No.

Q. And I noticed in this building, perhaps on this floor or the tenth floor, a sign on the door that said I think Human Resources, OneBeacon Insurance?

A. Uh-hum. Tenth floor.

Q. Do you know who is the head of that unit?

THE WITNESS: Who is the chief human resources officer?

MR. McKENNA: Yes.

A. Yes, I do.

Q. What is the name of that person?

A. Thomas Schmitt, S-C-H-M-I-T-T.

Q. And is Mr. Schmitt located in this building at OneBeacon Street, Providence -- Boston?

A. Yes, he is.

Q. Do you know if the human resources department has information on employees of the various members of the group of OneBeacon Insurance Company -- OneBeacon Insurance Group?

A. All -- all people who work for the group are employed by OneBeacon Insurance Company, but I lost the question.

Q. Let me just repeat it, make sure I understand your answer.

OneBeacon Insurance Company referring to the



44d59ef1-f3b2-45f9-b7a5-4c217ed5fd9d

Q. -- there appears to be two Delaware entities, I believe use the name funding corporation or something to that effect?

A. Fund American?

Q. Yes. What is the purpose of that entity, if you know?

MR. BENGTSON: I object.

A. Well, there are two of them.

Q. All right.

A. Well, there are now three. Starting from OneBeacon Insurance Group LLC going up, Fund American Companies, Inc., Fund American Enterprises Holdings, Inc., and Fund American Financial Services, Inc. They -- and the latter may not -- I can't remember when that got into the picture. It may not have been in that -- shown in that 10-K.

Q. Okay.

A. They're all intermediate holding companies.

Q. I see.

A. They have various functions. Some of them have issued preferred stock, some of them -- one of them, I believe, has some public debt.

Q. Okay.

A. But they're not part of -- we don't



44d59ef1-f3b2-45f9-b7a5-4c217ed5fd9d

with them in any detail.

Q. The 10-K report of White Mountains LTD have several references to the operation of the OneBeacon's insurance subsidiaries?

A. Uh-hum.

Q. Could you tell us, if you know, who would have been responsible for the preparation of that information for the 10-K report?

A. I don't know for sure.

Q. Would that be within the legal department of your group?

A. I've been asked various questions from time to time, you know, in connection with -- with that and other matters, but it's -- it's obviously -- they get input from -- it's prepared at the White Mountains level primarily by the people up in New Hampshire, Hanover, New Hampshire, and they get input from, you know, the entire -- entire White Mountains group on various issues and a lot of it they just handle themselves. They have their own general counsel, they have accounting people and so forth and so on.

Q. Would Mr. Forsyth, your new general counsel, have knowledge of that information?

A. No more so than -- than me, especially

it goes. I mean I'm aware in very, very general terms.

Q. Does your office have a responsibility for the enforcement of that statute within your group?

A. Not specifically.

Q. Do you know what persons are responsible for the -- let me put it differently. Do you know who is the executive officer who files the certifications under the Sarbanes-Oxley Act for OneBeacon Insurance corporate entities?

A. No, I don't. Do I know the -- if you told me who the individual was, I could tell you whether I knew him or her but do I know which individual does Sarbanes-Oxley certifications? No, I don't.

Q. Michael Miller is the present chief executive officer of OneBeacon Insurance Group, correct?

A. Which entity?

Q. Well, it's my understanding he -- he has authority over all of them.

A. He's president and CEO of OneBeacon Insurance Group LLC. He also holds that title in most, but not all, of our insurance company members.

Q. And John Cavoores --

A. Cavoores.

MR. McKENNA: We're wasting time by not paying my client his claim.

MR. BENGTSON: You make another remark like that, this is going to be a short deposition, Mr. McKenna.

MR. McKENNA: Well, you're making paternalistic remarks also which is not like you.

MR. BENGTSON: No, we're supposed to be focused on your motion and our motion, not the 10-K report. I let this go for a long time and it's about to stop. It's an hour into this.

MR. McKENNA: I'm sure you agree that the purpose of discovery is to lead to discoverable information.

MR. BENGTSON: No. This is discovery you asked for because of the motions we filed and you filed. That's where we're going to be staying.

BY MR. McKENNA:

Q. Am I correct that if I asked you questions about the claims process that is undertaken by your company, the company by which you are employed, you wouldn't be familiar with that; is that correct?

A. Would or wouldn't be?

Q. Would not be.

A. Correct.



44d59ef1-f3b2-45f9-b7a5-4c217ed5fd9d

A. Uh-hum.
Q. -- which has been used in this litigation and I'd like to ask you a question about Paragraph 1 and 2.
A. Uh-hum.
Q. Is your counsel showing you that as I speak to you?
A. Yes.
Q. With regard to Paragraph 1 where it says the sole member of OneBeacon Insurance Company --
A. OneBeacon Insurance Group.
Q. -- LLC, I'm sorry, is Fund America Companies, Inc., a Delaware corporation with its principal place of business at OneBeacon Street, Boston, Massachusetts, 02108?
A. Uh-hum.
Q. Can you tell me who the -- am I correct that the managers of OneBeacon Insurance Group LLC are listed on the attachment that you had provided in the report of a foreign corporation doing business in Massachusetts to the Secretary of State?
MR. BENGTSON: I object. Go ahead.
A. If it's the document I'm thinking of, then -- then yes, that's correct.
Q. And the managers let me -- strike that.

A. That's correct.

Q. It's not a -- it is not some special charter from the state of Pennsylvania to do things that only it can do? It is not -- it's a general incorporation statute as opposed to a special act?

A. Correct. It is an insurance company but it's -- yes, it's -- it's a Pennsylvania regular business corporation.

Q. Did you play any role in the drafting in 2001 and 2002 of the automobile insurance policies?

A. No.

Q. Are you familiar with the Insurance Service Office, Inc. known as ISO?

A. I've heard of it.

Q. You have not dealt with them at all?

A. No.

Q. Okay. With regard to this particular case entitled James LaPlante versus OneBeacon Insurance Company, were you familiar with this controversy at all prior to James LaPlante suing OneBeacon Insurance Group?

MR. BENGTSON: I object. You got the name wrong.

MR. McKENNA: I'm sorry.

MR. BENGTSON: That's okay. You got the



44d59ef1-f3b2-45f9-b7a5-4c217ed5fd9d

A. No.

MR. McKENNA: I'm going to show you what has been marked in another proceeding as Exhibit 8. I'm going to mark it here as Exhibit 6 and I want to -- it's regarding litigation, a department of which you are a member. I just want to ask you a brief question. I'll ask the stenographer to put a sticker on it and show it to the deponent.

(Whereupon, Plaintiff's Exhibit No. 6 was marked.)

THE WITNESS: Okay.

Q. You are familiar with Thomas Forsyth, are you not?

A. Yes, I am.

Q. And I just want you to take a moment to read the exhibit I gave you and tell me, not in terms of his personal life but in terms of his appointment, is the first line of that press release correct?

A. No.

Q. If you could read it and tell me what's incorrect, I would appreciate it.

A. Well, OneBeacon Insurance Group meaning a group as we've been using it here today is not a subsidiary of White Mountains Insurance Group



44d59ef1-f3b2-45f9-b7a5-4c217ed5fd9d

THE WITNESS: This is Exhibit 4.

MR. BENGTSON: Okay.

THE WITNESS: Purports to be a report of exam of York Insurance Company of Maine. I mean it looks like it's authentic but I don't know that.

MR. McKENNA: Could I ask a question of the stenographer? What time is it?

COURT REPORTER: 12:25.

BY MR. McKENNA:

Q. If we took a break for lunch and came back, could you answer that question?

A. I'd like to just get this over with, if that's all right.

Q. All right. How would you like to --

MR. BENGTSON: We're not going to do this today, I can tell you that.

A. Ask me a specific question, I'll tell you whether I think it's correct or not. I can't comment on this whole report.

Q. Well, you are familiar, based on your testimony, as I understand it, with the method by which York Insurance Company of Maine came into being in the group which you represent, correct?

A. I don't think you've asked me that before but how it became a member of our group I am

Q. From the CGU purchase to the present.
A. Are you talking about group names?
Q. Tell us -- could you tell us when it became OneBeacon Insurance Group?
THE WITNESS: When that group name was adopted?
MR. McKENNA: Yes.
A. I think I did tell you but it was June of 2001.
Q. And at that time, June of 2001, was York Insurance Company of Maine a member of the group?
A. Well, it didn't have that name then. It was then named Commercial Union York Insurance Company. It was part of the group that White Mountains acquired, yes, in 2001. It's been a member of a group that has changed its name at least twice since 1997.
Q. And do you recall when the name was changed to the present name?
A. From York -- from Commercial Union York Insurance Company to York Insurance Company of Maine?
Q. Yes.
A. I believe it was sometime in the latter part of 2001.

Q. Are you familiar with the White Mountains Insurance Group LTD 2004 management report related to OneBeacon?

A. Related to OneBeacon?

Q. Describing the --

A. I've seen that management report. I'm not very familiar with it. I -- I probably read it at the time it came out.

Q. I'm going to mark as the next exhibit, Exhibit No. 7, the cover sheets and pages written by John P. Cavoores --

A. Cavoores.

Q. -- to the shareholders are at Paragraphs 21, 22, 23 and 24. And ask you whether or not this appears to be an authentic copy of the report as it relates to --

A. I can't answer that without even looking at it.

Q. Well, I was going to show it to you.

A. Well, I can look at it. I still can't tell you if it's an authentic report but --

Q. You've read that?

A. I read it in 2004. I'm not -- I don't know if that's an actual copy or not. If you're telling me it is, I'll take your word for it but I



44d59ef1-f3b2-45f9-b7a5-4c217ed5fd9d

reports?

Q. Yes.

A. Yes.

Q. Could you identify t
tell us whether your signature
each exhibit?

A. Exhibit 8 is a 2005
foreign limited liability comp
Insurance Group LLC, dated Jan
is my signature.

Exhibit 9 is for the same
original application for regis
LLC in Massachusetts. It's dat
and that is also my signature.

Q. And the final exhibit
you to your immediate right, i
a moment to look at it, and pa
headline where it indicates th
Group is looking for employees
purported advertisement for jo

A. Yes, I do.

Q. As I understand your
actually OneBeacon Insurance G
people in the group, it's actu
Insurance Company?

can't authenticate it.

Q. Well, can you tell me whether it appears to be the same one that you read in that time period?

A. I can tell you whether I think it is.

MR. McKENNA: All right. Let me give this to the stenographer.

(Whereupon, Plaintiff's Exhibit No. 7 was marked.)

THE WITNESS: Let me stand for a minute.

MR. BENGTSON: Let's take a break.

( R E C E S S )

MR. McKENNA: Can I mark these two documents here as exhibits, please?

(Whereupon, Plaintiff's Exhibits No. 8 and No. 9 were marked.)

MR. McKENNA: Would you mark this exhibit, please?

(Whereupon, Plaintiff's Exhibit No. 10 was marked.)

BY MR. McKENNA:

Q. I've shown you two exhibits which have your signature on them. Do you see those in front of you?

A. These two OneBeacon Insurance Group LLC



44d59ef1-f3b2-45f9-b7a5-4c217ed5fd9d

reports?
Q. Yes.
A. Yes.
Q. Could you identify the exhibit and just tell us whether your signature is on the bottom of each exhibit?
A. Exhibit 8 is a 2005 annual report of a foreign limited liability company, OneBeacon Insurance Group LLC, dated January 20, 2005. That is my signature.
Exhibit 9 is for the same entity. That's the original application for registration as a foreign LLC in Massachusetts. It's dated January 22, 2002 and that is also my signature.
Q. And the final exhibit I would like to show you to your immediate right, if you could just take a moment to look at it, and particularly the headline where it indicates that OneBeacon Insurance Group is looking for employees. Do you see that purported advertisement for jobs?
A. Yes, I do.
Q. As I understand your testimony, it's not actually OneBeacon Insurance Group that employs people in the group, it's actually OneBeacon Insurance Company?



44d59ef1-f3b2-45f9-b7a5-4c217ed5fd9d

# C E R T I F I C A T E

I, Vivian S. Dafoulas, Notary Public in and for the Commonwealth of Massachusetts, do hereby certify there came before me on the 21st day of February, 2006, the deponent herein, who was duly sworn by me; that the ensuing examination upon oath of the said deponent was reported stenographically by me and later reduced to print through computer-aided transcription; and that the foregoing transcript is a true record of the questions asked and answers given at said deposition.

I further certify that I am neither attorney or counsel for, nor related to or employed by any of the parties to the action in which this deposition is taken; and, furthermore, that I am not a relative or employee of any attorney or counsel employed by the parties hereto or financially interested in the action.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my Notarial Seal this 22nd of February, 2006.

______________________________
Vivian S. Dafoulas
Notary Public
Commonwealth of Massachusetts
My commission expires 7/10/09



44d59ef1-f3b2-45f9-b7a5-4c217ed5fd9d

# CORRECTION SHEET

DEPOSITION OF:
DENNIS SMITH
February 21, 2006

PAGE # LINE #

NOW READS: CORRECTION REQUESTED:



44d59ef1-f3b2-45f9-b7a5-4c217ed5fd9d